FIRST DIVISION
February 14, 2011

No. 1-08-0500

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the
) Circuit Court of
       Plaintiff-Appellee, ) Cook County.
)
       v. ) No. O5C6-61126-01
)
JOHN ANDERSON, ) Honorable
) Michelle M. Simmons,
       Defendant-Appellant. ) Judge Presiding.


     PRESIDING JUSTICE HALL delivered the judgment of the court, with opinion.

     Justices Lampkin and Rochford concurred in the judgment and opinion.

**OPINION**

     Following a jury trial, the defendant, John Anderson, was found guilty of residential burglary.  The trial court imposed a sentence of 20 years' imprisonment in the Department of Corrections.  The defendant appeals.

     On appeal, the defendant raises the following issues: (1) whether the denial of his motion to suppress was error; (2) whether it was error to admit evidence which permitted the jury to find the defendant guilty of an uncharged residential burglary; (3) whether it was error to allow the jury to view a

certified copy of the defendant's previous conviction, which contained prejudicial surplusage; (4) whether the defendant's testimony in support of his defense was inadmissible hearsay; (5) whether the prosecutor's remarks in closing argument deprived the defendant of a fair trial; (6) whether it was error to deny defense counsel's request to question the venire to ascertain any bias based on the defendant's prior conviction; and (7) whether the cumulative effect of the alleged errors denied the defendant a fair trial and due process of law. We affirm the defendant's conviction and sentence.

The defendant was charged with a single count of residential burglary. The indictment charged that, on or about September 17, 2005, the defendant entered the residence of Joann Hess with the intent to commit a theft. See 720 ILCS 5/19-3(a) (West 2004). In response to the defendant's request for a bill of particulars, the State identified the date and time of the offense as on or about September 17, 2005, at approximately 2:39 a.m., and that it occurred at or near 12316 Vincennes, Blue Island, Illinois.

As the defendant does not challenge the sufficiency of the evidence, only a brief summary of the evidence at trial is necessary. Evidence pertinent to an issue raised on appeal will

No. 1-08-0500

be set forth in connection with that issue.

SUMMARY OF TRIAL EVIDENCE

Joann and Jeffrey Hess resided at 12316 Vincennes Avenue in Blue Island. On September 16, 2005, the Hesses attended a party. At approximately 2 a.m., on September 17, 2001, Mrs. Hess returned to their residence and discovered evidence of a burglary: the front door was unlocked, and jewelry, cash and gas cards were missing. After being notified of the burglary, Mr. Hess returned to the residence. As the Hesses stood in their kitchen, a man, later identified as the defendant, entered the residence through the front door and began looking around. When Mrs. Hess cried out that the man was back, the defendant fled the house, pursued by Mr. Hess. Mr. Hess managed to restrain the defendant. The defendant told Mr. Hess that if he did not call the police, he would get the Hesses' property returned to them. The police arrived, and a search of the defendant revealed a set of car keys, which had been on the kitchen counter of the residence when Mrs. Hess left for the party.

The defendant gave a statement to Blue Island police officers. Initially, the defendant had acted as a lookout while a friend of his, Cat Daddy, entered the Hess residence and

3

removed some items. Cat Daddy shared the proceeds with his girlfriend and then told the defendant to return to the Hess residence and see what else he could take. When the defendant returned to the Hess residence, he was confronted by the homeowner. However, at trial the defendant testified that, prior to going to the Hess residence, he had witnessed Mrs. Hess giving a set of keys to Cat Daddy's brother in exchange for drugs. The keys were then given to the defendant who went to the Hess residence only to exchange the keys for $20.

The jury found the defendant guilty of residential burglary. Following the denial of his motion for a new trial, the defendant was sentenced to 20 years' imprisonment. This timely appeal followed.

ANALYSIS

I. Denial of Motion to Suppress Statement

The defendant contends that the trial court erred when it denied his motion to suppress the inculpatory statement he gave to police following his arrest.

A. Pertinent Evidence

At the hearing on the motion to suppress, the following testimony was presented by the parties.

4

Bernadine Rzab[1] testified that, on September 17, 2005, she was a detective with the Blue Island police department. After reporting for work at 3 p.m., Officer Rzab was informed that the defendant, a burglary suspect, had been taken into custody at approximately 2:45 a.m. that morning. At approximately 4:30 p.m., Officer Rzab and Corporal Kevin Sisk interviewed the defendant.

Officer Rzab advised the defendant of his Miranda rights. She had the defendant read aloud each of the rights from the printed form. As he read each right, she asked if he understood each right. He indicated he did and placed his initials by each right. Both officers signed the waiver of rights form after the defendant signed it.

After signing the waiver form, the defendant agreed to speak to the officers and agreed that his statement could be summarized in writing. The conversation lasted approximately 40 minutes. The defendant appeared coherent and had no difficulty forming sentences. After the defendant gave his statement, Officer Rzab

---

[1]The record reflects that Officer Rzab also spelled her name "Azab."

had him review what she wrote, and the defendant agreed it was accurate. The defendant also acknowledged in the statement that he had been treated well while in custody and that he was not forced to make the statement.

When questioned about the defendant's physical condition, Officer Rzab stated that he appeared fine and that there was no change in his physical condition during the interview. The defendant never stated that he suffered from diabetes or that he was taking insulin. She denied that the defendant told her that he needed to take his insulin or that he told her he did not understand the proceedings because he was ill. She never denied medication to the defendant, and there was no discussion regarding the defendant's need to take medication.

On cross-examination, Officer Rzab testified that she was unaware of whether the defendant had been given any food prior to beginning her interview with him. She did not ask the defendant if he needed food. She acknowledged that she was unfamiliar with the defendant's "normal" demeanor. She again denied that the defendant told her he was a diabetic or that he requested insulin. She did not recall telling the defendant that she would help him get insulin after their discussion. Officer Rzab denied

No. 1-08-0500

that she escorted the defendant to another room to make a telephone call to obtain insulin.

The defendant testified that he was 45 years of age and had been an insulin-dependent diabetic since 1984. He took insulin twice a day, in the morning and the evening. Following his arrest, he was placed in a holding cell at approximately 2:40 a.m. He had no medication with him, and he was not offered any food or anything to drink. He had last taken his insulin the morning of September 16, 2005, and had last eaten around 8:30 p.m. the evening of the 16th.

When he entered the interview room, he was feeling ill; he had a severe headache, cramps, he was sweating, and feeling nauseated. He told Officer Rzab that he was an insulin-dependent diabetic and need his insulin. He also told her that he had some insulin at his godmother's residence. The defendant was not wearing his glasses, which, due to his diabetes, he needed in order to see clearly.

The defendant testified that he repeatedly told Officer Rzab that he was ill and needed his insulin. Officer Rzab responded that once they concluded the interview, she would see about obtaining insulin for the defendant. He did not recall Officer

7

Rzab asking if he wanted his statement in writing, but he did recall Officer Rzab reading the statement to him and telling him that if he signed it, he could make a telephone call to get the insulin. The defendant did not read the written statement.

After the defendant signed the statement, Officer Rzab took the defendant into the squad room so he could telephone his godmother, Elizabeth Broadway. He spoke to Ms. Broadway, but she was unable to bring his insulin to the police station. After he concluded the call, Officer Rzab told him she would see about getting him insulin. The defendant was then returned to his cell. When he was taken to bond court the next morning, he passed out and woke up in the hospital.

On cross-examination, the defendant testified that, while in custody, he had three meals, each consisting of a cheeseburger and a soft drink. The first time he ate was after he signed the statement. The defendant maintained that he signed the statement because he was feeling ill. He acknowledged that, despite not having his glasses, he was able to place his initials on the lines of the form. The defendant pointed out that three of the letters of his signature on the waiver of rights form were not exactly on the line. However, he acknowledged that he signed on

8

the lines, including a slanted line, in three places on his statement.

On redirect examination, the defendant testified that much of the food he consumed while in custody was not good for him. He passed out because he had not taken his insulin since the morning of September 16, 2005. He was able to sign the statement because it was placed right in front of him. On re-cross-examination, the defendant maintained that he was not given a choice of food; he ate because he was hungry.

Corporal Kevin Sisk testified that on September 17, 2005, he was a corporal detective with the Blue Island police department. Officer Rzab and he conducted an interview of the defendant. The defendant did not appear ill during the interview. He appeared coherent and did not have any difficulty communicating during the interview. He made no request of either officer. On cross-examination, Corporal Sisk acknowledged that he was not familiar with the defendant's normal appearance.

The State requested that the trial court take judicial notice that, in bond court on September 18, 2005, the judge set bond but issued a "no body" mittimus for the defendant. The trial court denied the motion to suppress.

9

No. 1-08-0500

### B. Standard of Review

In reviewing a trial court's ruling on a motion to suppress, we apply a two-part standard. While we will not reverse the trial court's factual findings unless they are against the manifest weight of the evidence, the trial court's ultimate determination is reviewed de novo. People v. Luedemann, 222 Ill. 2d 530, 542, 857 N.E.2d 187 (2006).

### C. Discussion

In determining whether a confession is voluntary, the court must consider the totality of the circumstances. People v. Gorgis, 337 Ill. App. 3d 960, 970-71, 787 N.E.2d 329 (2003). Factors to be considered include the defendant's age, intelligence, background, experience, mental capacity, education, physical condition at the time of questioning, and any physical or mental abuse by police, including the existence of threats or promises. Gorgis, 337 Ill. App. 3d at 971.

The defendant maintains that the police denied him food, water and medical attention until he provided a confession to the residential burglary charge. The State initially responds that the defendant has forfeited the issue because he did not specifically allege it in his motion to suppress or raise it in

10

No. 1-08-0500

his motion for a new trial.

The purpose behind the waiver rule is to ensure that the trial court was given the opportunity to correct any errors before they are raised on appeal. People v. Bennett, 376 Ill. App. 3d 554, 567, 876 N.E.2d 256 (2007). In support of his motion to suppress and in his testimony at trial, the defendant argued that he was not given any food and was denied insulin until he gave a statement to the detectives. In his motion for a new trial, the defendant alleged that the denial of his motion to suppress was error. In denying the defendant's motion for a new trial, the trial court was clearly aware of the arguments the defendant raised in contesting that his confession was voluntary. As the trial court had the opportunity to consider the defendant's arguments both prior to and after the trial, the issue was not forfeited.

The defendant maintains that evidence established that the officers withheld insulin, food and water to the defendant until he agreed to give them a statement. While the fact that the defendant was a diabetic was uncontradicted, what is disputed in this case is whether he informed the officers that he was a diabetic and needed insulin. In contrast to the defendant's

11

No. 1-08-0500

testimony, the officers maintained that the defendant made no complaints or requests during the interview, never informed them that he was a diabetic and required insulin, and appeared alert and coherent during the interview.

In ruling on a motion to suppress, the trial court must resolve conflicts in the evidence and determine the credibility of the witnesses. Gorgis, 337 Ill. App. 3d at 971. The trial court is in a better position than the reviewing court to assess the credibility and demeanor of the witnesses who testified at the hearing and to assess the relevant facts. Gorgis, 337 Ill. App. 3d at 971. In this case, credibility was the determinative factor in the outcome of the hearing. The trial court resolved the conflicts in the evidence against the defendant. We find no basis in the record for disagreeing with the trial court's credibility determinations. Therefore, they are not against the manifest weight of the evidence.

The cases relied on by the defendant are distinguishable. In People v. Strickland, 129 Ill. 2d 550, 544 N.E.2d 758 (1989), the police were aware that the defendant was injured when he was arrested and did not obtain medical treatment for him until he had given a statement. In the present case, the issue of whether

12

the officers were aware of the defendant's medical condition was resolved against the defendant.

In In re V.L.T., 292 Ill. App. 3d 728, 686 N.E.2d 49 (1997), the reviewing court found the 10-year-old respondent's confession to have been coerced. The evidence established that the respondent, who had no prior experience with police, was taken from her home in her pajamas, was tired and hungry, and despite her request, no one concerned with her welfare was present for her to confer with prior to writing out her confession. V.L.T., 292 Ill. App. 3d at 737. The evidence in this case established that the defendant was a mature man, who never indicated to police that he required food or medical attention or assistance of any kind.

We conclude that the trial court did not err in denying the defendant's motion to suppress his inculpatory statement.

## II. Uncharged Offense

The defendant contends that his burglary conviction must be reversed because he may have been convicted of an uncharged offense. He maintains that the indictment charged him only in connection with his own entry into the Hess residence. He argues that by giving the jury an instruction on accountability, the

No. 1-08-0500

jury may have convicted him based on evidence that he served as a lookout when Cat Daddy entered the Hess residence. The State responds that the trial court correctly found that the two entries were part of a continuous course of conduct and that the defendant's conduct constituted the singular offense of residential burglary.

## A. Pertinent Evidence

Prior to trial, defense counsel filed a motion in limine to bar evidence of other crimes, specifically the reference in the defendant's statement that he acted as a lookout while Cat Daddy entered the Hess residence and removed certain items from the residence.

Defense counsel argued that, based on the defendant's statement, two separate burglaries occurred; one in which the defendant acted as a lookout and the other when he actually entered the residence. Based on the indictment and its answer to the bill of particulars, defense counsel maintained that the State was proceeding only on the burglary in which the defendant actually entered the residence. In response, the prosecutor argued that the defendant's actions in acting as a lookout and his entry into the Hess residence comprised one continuous crime.

14

No. 1-08-0500

While the exact time of the defendant's actions could not be ascertained, the prosecutor noted that, according to the defendant's statement, he did not arrive in Blue Island until 2:30 a.m. on September 17, 2005. While trial counsel acknowledged that both entrances to the Hess residence were on September 17, 2005, she pointed out that Mrs. Hess was expected to testify that she discovered evidence of the burglary at 2 a.m. on September 17, 2005.

After reviewing the defendant's statement, the trial court denied the motion. Relying on the defendant's statement, the court determined that the defendant's actions as a lookout and his own entry into the Hess residence constituted a continuous course of conduct. There was no previous burglary and therefore, the defendant's statement did not refer to other crimes.

### B. Discussion

The defendant first challenges the trial court's determination that the defendant's participation as a lookout for Cat Daddy and his own entry into the Hess residence was a continuous course of conduct and constituted the commission of a single burglary as charged in the indictment. The defendant relies on People v. Bell, 196 Ill. 2d 343, 751 N.E.2d 1143

15

No. 1-08-0500

(2001). In Bell, the supreme court held that for purposes of eligibility for extended-term sentencing, "[i]f there was a substantial change in the nature of the criminal objective, the defendant's offenses are part of an 'unrelated course of conduct.' " Bell, 196 Ill. 2d at 354-55.

The defendant maintains that the State's evidence showed there was a substantial change in the defendant's criminal objective between the first and second entries. The defendant asserts that, in the first entry, he served as a lookout while Cat Daddy burglarized the Hess residence for the benefit of himself and his girlfriend. When the defendant entered the Hess residence, it was to obtain items for himself. However, the evidence also established that when the police searched the defendant, he had keys that had been taken from the Hess residence. According to the defendant's statement, after Cat Daddy and he returned to Cat Daddy's apartment, the defendant took the keys that Cat Daddy had obtained from the Hess residence and returned to obtain more items. After he was surprised by the Hesses, the defendant testified that he was trying to return to Cat Daddy's apartment when he was tackled by Mr. Hess.

Based on the evidence and the reasonable inferences from

16

that evidence, we agree with the trial court that the defendant's conduct in acting as a lookout and his own entry into the Hess residence constituted a single burglary as charged in the indictment. Assuming, arguendo, the two entries into the Hess residence did not constitute a continuous course of conduct, the error does not require reversal.

Citing People v. Crespo, 203 Ill. 2d 335, 788 N.E.2d 1117 (2001), the defendant argues that it would be unfair to uphold his conviction based on either of two burglary theories, one which is not legally valid. In Crespo, while the court rejected the State's argument that three separate stab wounds sustained by the victim supported three separate offenses, it was because "[w]e believe that to apportion the crimes among the various stab wounds for the first time on appeal would be profoundly unfair." (Emphasis added.) Crespo, 203 Ill. 2d at 343. In the present case, the State's argument that it was seeking to convict the defendant either as an accomplice or a principal was raised at trial.

The defendant then argues that where the jury was instructed on alternative theories of guilt and may have relied on an invalid one, the guilty verdict may not stand. See Yates v.

17

No. 1-08-0500

United States, 354 U.S. 298 (1957), overruled on other grounds by

Burks v. United States, 437 U.S. 1 (1978).  However, our supreme

court's decision in People v. Davis, 233 Ill. 2d 244, 909 N.E.2d

766 (2009), suggests otherwise.

In Davis, our supreme court determined that a harmless-error

or a plain-error analysis applied to a constitutional due process

error.  The court noted that in Hedgpeth v. Pulido, 555 U.S. 57

(per curiam), the United States Supreme Court held that where the

jury was instructed on multiple theories of guilt, one of which

is improper, a harmless-error analysis is applicable.  Davis, 233

Ill. 2d at 270, citing Hedgpeth, 555 U.S. at ___, 129 S. Ct. at

532.  The court further noted that Yates had been decided prior

to the decision in Chapman v. California, 386 U.S. 18 (1967), in

which the Court held that constitutional error may be harmless.

The harmless-error analysis also applies to violations of the

Illinois Constitution.  See People v. Rivera, 227 Ill. 2d 1, 30,

879 N.E.2d 876 (2007) (harmless-error analysis applied to

violation of the right to a jury trial under the federal

constitution and applied to a violation of that right alleged

under the Illinois Constitution).

Unlike Davis, where the plain-error analysis applied because

18

No. 1-08-0500

the error was not preserved, here the error was preserved for review; therefore, the harmless-error analysis applies. People v. Thurow, 203 Ill. 2d 352, 363, 786 N.E.2d 1019 (2003). Under the harmless-error analysis, the test is whether, absent the error, a rational jury could have found the defendant guilty beyond a reasonable doubt. Thurow, 203 Ill. 2d at 368-69. The State bears the burden of proof. Thurow, 203 Ill. 2d at 363.

Even assuming that a conviction on the accountability theory would have been invalid because the defendant was never charged in connection with Cat Daddy's entry, there was more than sufficient evidence from which the jury could conclude that the defendant was guilty of burglary based on his own entry into the Hess residence. The only contested issue was why the defendant was present at the Hess residence. The State's evidence established that the defendant was in possession of a set of keys, that had been in the Hess kitchen when Mrs. Hess left. While the defendant testified that he was given the keys to return them for money, his statement was contracted by his own statement to police, as well as his statement to Mr. Hess that if he did not call the police, the defendant could assist in getting the remaining stolen items returned.

19

We conclude that any error in allowing the jury to consider an accountability theory in convicting the defendant was harmless beyond a reasonable doubt.

III. Admission of Certified Copy of Previous Conviction

The defendant contends that the trial court erred by admitting the certified copy of the defendant's conviction without deleting the references to the sentence he received, that he caused injury and great bodily harm and the nine counts the defendant was charged with, not just the seven of which he was convicted. He acknowledges that he failed to preserve the error but seeks review under the plain-error doctrine. See Ill. S. Ct. R. 615(a). Under the plain-error doctrine, we may consider a forfeited issue "when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." People v. Herron, 215 Ill. 2d 167, 186-87, 830 N.E.2d 467 (2005). The defendant asserts that we should review the alleged error because the evidence is closely balanced. First, we must determine if error occurred. People v. Hudson, 228 Ill. 2d 181, 191, 886 N.E.2d 964 (2008).

To impeach a defendant with a prior conviction, the proper

method of proof is the introduction of a certified copy of the record of conviction only. People v. Davis, 54 Ill. App. 3d 517, 525, 369 N.E.2d 1376 (1977). The inclusion of irrelevant evidence such as the inclusion of criminal charges of which the defendant was not convicted was surplusage, irrelevant and erroneous. Davis, 54 Ill. App. 3d at 525. It is also improper to indicate the sentence the defendant received for a prior conviction, as it is immaterial to the question of a defendant's credibility. People v. Pruitt, 165 Ill. App. 3d 947, 954, 520 N.E.2d 867 (1988). The details appearing on the documents necessary to prove the defendant's prior conviction may be so prejudicial that the defendant would be entitled to a new trial. See People v. Dudley, 217 Ill. App. 3d 230, 234, 576 N.E.2d 1110 (1991). Assuming, arguendo, that the admission of the surplusage information was error, we must address the defendant's argument that the evidence is closely balanced.

In People v. Naylor, 229 Ill. 2d 584, 893 N.E.2d 653 (2008), the supreme court determined that the trial court erred when it admitted the defendant's prior conviction. In conducting a plain-error analysis, the court further determined that the evidence was closely balanced where the trial court was faced

21

with two credible versions of the event. As the State's only successful attack on the defendant's testimony was his erroneously admitted prior conviction and the court could not be certain the error did not prejudice the defendant's right to a fair trial, the error was not forfeited and required that the defendant receive a new trial. Naylor, 229 Ill. 2d at 608-09.

The defendant's reliance on Naylor is misplaced. Unlike the trial judge in Naylor, in the present case, the jury was not faced with two equally credible versions of the events. The testimony of the Hesses established that the defendant entered their residence and that the defendant had in his possession a set of keys, which had been in the residence at the time Mrs. Hess left. The defendant attempted to flee and was restrained by Mr. Hess. The defendant then offered to help Mr. Hess retrieve his possessions. The defendant's testimony denying his participation in the burglary was contradicted by his statement admitting his participation in the burglary of the Hess residence and his possession of the keys taken from the residence.

The evidence is not closely balanced in this case, and the defendant does not argue the second prong of the plain-error analysis. Therefore, we conclude that there is no basis for

22

No. 1-08-0500

excusing the defendant's procedural default.

## IV. Hearsay

The defendant contends that the trial court erred when it barred a portion of the defendant's testimony on the basis that it was hearsay and that the error prevented him from establishing his defense. The State responds that the testimony was hearsay and that any error was harmless and did not deprive the defendant of his defense.

### A. Pertinent Evidence

On direct examination, the defendant testified that Cat Daddy passed him a set of keys from Cat Daddy's brother. The defendant was then questioned as follows:

"Q. After you had that conversation about these keys, did you do anything?

A. Meaning?

Q. What did you do after you had this conversation about the keys that you were given?

A. I went down the street. I followed their direction."

The prosecutor's objection was sustained, and the answer was stricken. The questioning then continued as follows:

23

"Q. Just tell me what you did. Where did you go?

A. I walked down the street on the same side of the street we all were on until I saw the house on the opposite side of the street like they told me."

Again, the prosecutor's objection was sustained. The trial court instructed the defendant to answer the question without telling what someone told him to do. The defendant indicated that he understood the court's instruction. The questioning continued as follows:

"Q. All right. You said you walked to a house. How did you know which house to walk to?

A. I was given instructions."

Outside the presence of the jury, defense counsel argued that the testimony was not hearsay in that it was not offered for the truth of the matter asserted but to explain why the defendant went to a particular house. The trial court disagreed, finding that the testimony was offered to prove that the defendant was told by someone to go that house. Later, the trial court allowed the defendant to testify that he was going to the Hess residence to get $20.

### B. Standard of Review

24

No. 1-08-0500

A trial court's decision on the relevance and admissibility of evidence is reviewed for an abuse of discretion. People v. Gonzalez, 379 Ill. App. 3d 941, 953, 884 N.E.2d 228 (2008).

C. Discussion

In order to constitute hearsay, the statement must be offered to establish the truth of the matter asserted in the statement. Gonzalez, 379 Ill. App. 3d at 954. "The primary rationale for the exclusion of hearsay testimony is the inability of the opposition to test the testimony's reliability through cross-examination of the out-of-court declarant." People v. Weatherspoon, 394 Ill. App. 3d 839, 850, 915 N.E.2d 761 (2009). Where the out-of-court statement is offered to prove its effect on the listener's mind or to show why the listener subsequently acted as he did, the statement does not constitute hearsay and is admissible. Gonzalez, 379 Ill. App. 3d 941.

The defendant maintains that the excluded testimony was not hearsay because his testimony as to Cat Daddy's instructions was offered to explain that he went to the Hess residence to return a set of car keys. In People v. Sorrels, 389 Ill. App. 3d 547, 906 N.E.2d 788 (2009), the reviewing court held that a police officer's order to the defendant to "stop," was not hearsay as it

25

was admitted to establish that the defendant ignored the officer's command and continued to flee.  In addition, the court found that the statement was properly admitted because there was "'no truth of the matter asserted'" in the command to "stop" and that it was not necessary "'to test the reliability through cross-examination of the out-of-court declarant' because that testimony has no 'reliability' in the hearsay sense."  All that mattered was that the word was uttered.  Sorrels, 389 Ill. App. 3d at 553.

Likewise, in this case, the defendant's statement that he was instructed to go to the Hess residence did not constitute hearsay because it was offered to show why the defendant acted as he did, namely to go to the Hess residence.  Like the "stop" command in Sorrels, the instruction to go to the Hess residence did not constitute "'an assertion or a statement of fact.'" See Sorrels, 389 Ill. App. 3d at 554 (quoting Holland v. State, 713 A.2d 364, 369-70 (Md. Ct. Spec. App. 1998).

"Erroneous exclusion of admissible evidence does not mandate reversal unless defendant was prejudiced and the error affected the verdict."  Weatherspoon, 394 Ill. App. 3d at 850-51.  In Weatherspoon, the trial court erroneously excluded on the grounds

26

of hearsay the defendant's testimony that during a conversation with a group of men, he felt threatened.  The defendant argued that the exclusion of the testimony prevented him from explaining why he left the jurisdiction.  The reviewing court held that the error was harmless where, from the defendant's testimony, the jury could discern that the conversation was so disturbing as to cause the defendant to immediately leave Chicago.  The court concluded that, considering all of the evidence and arguments, the jury was sufficiently aware of an explanation for his flight compatible with the defendant's innocence.  Weatherspoon, 394 Ill. App. 3d at 851-52.

In the present case, the defendant testified that he did not go to the Hess residence on his own, that he had a conversation with Cat Daddy or Cat Daddy's brother about the keys and that he was going to the Hess residence to make an exchange for $20.  On cross-examination, the defendant was questioned as follows;

"Q. Now, you indicated that you do remember that approximately sometime between 1:30 and 1:45 [a.m.], Cat Daddy's brother gives Cat Daddy some keys and Cat Daddy gives the keys to you, is that what happened?

A. Yes, ma'am.

Q. Were you now wearing a watch?

A. No, ma'am.

Q. How did you know the time this time?

A. Because it was late.  I had not too much more time before they told me the bus quit running.  When he gave me the keys, he said go on do that so you can go on and get out of here.

Q. Okay.

So he gave you the keys and then you walked to 12316 Vincennes, that's your testimony, right?

A. Yes, ma'am."

The admitted testimony was sufficient to acquaint the jury with an explanation for the defendant's presence at the Hess residence compatible with the defendant's innocence.  See Weatherspoon, 394 Ill. App. 3d at 853.  Therefore, the exclusion of the testimony did not prejudice the defendant, and given the overwhelming evidence against the defendant, the outcome of the trial would not have been different had the omitted testimony been allowed.

V. Prosecutor's Rebuttal Argument

The defendant contends that the prosecutor's improper

28

remarks during her rebuttal argument require that the defendant receive a new trial.

## A. Standard of Review

Our appellate courts are divided on the standard of review for closing remarks.  People v. Maldonado, 402 Ill. App. 3d 411, 421, 930 N.E.2d 1104 (2010).  The division stems from an apparent conflict between two supreme court cases.  In People v. Wheeler, 226 Ill. 2d 92, 121, 871 N.E.2d 728 (2007), the supreme court held that whether a prosecutor's remarks are so egregious as to require a new trial presents a question of law to which the de novo standard of review is applicable.  However, in Wheeler, the court also cited with approval People v. Blue, 189 Ill. 2d 99, 724 N.E.2d 920 (2000).  In Blue, the court applied the abuse of discretion standard to its review of the prosecutor's remarks.

Within this district, there is a division as to the applicable standard of review.  See People v. Raymond, 404 Ill. App. 3d 1028, 1038 (2010).  While noting the conflict, this division has declined to determine the appropriate standard, where the result would be the same regardless of which standard was applied.  See Maldonado, 402 Ill. App. 3d at 422.  As we would reach the same approach under either standard, we will

No. 1-08-0500

refrain from articulating the applicable standard until our supreme court resolves the conflict.

                    B. Discussion

                    1. Forfeiture

In order to preserve an issue for appeal, the defendant must object at trial and raise the issue in a posttrial motion. People v. Johnson, 385 Ill. App. 3d 585, 604, 898 N.E.2d 658 (2008). In his posttrial motion, the defendant raised only one remark by the prosecutor as error: that the defendant had two years to fabricate his defense. However, as the State points out, the defendant did not object to this remark at trial but rather to the prosecutor's reference to what the defendant "knew" two years before. As the prosecutor's remarks were either not objected to at trial or not raised in the defendant's posttrial motion, the defendant has forfeited any error based on the prosecutor's closing argument.

                    2. Plain Error

In his reply brief, the defendant requests that we review this issue for plain error. Ordinarily a litigant may not raise issues for the first time in a reply brief. Ill. S. Ct. R.

30

No. 1-08-0500

341(h)(7) (eff. Mar.16, 2007). However, this court has recognized that a reviewing court is not precluded from reviewing a defendant's plain-error argument even when it was raised for the first time in a reply brief. People v. Johnson, No. 1-07-3372, slip op. at 5-6 (Ill. App. Dec. 10, 2010) (citing People v. Williams, 193 Ill. 2d 306, 347-48, 739 N.E.2d 455 (2000)).

The defendant contends that we may consider the forfeited error in this case because the evidence is closely balanced. We must first determine if error occurred. Hudson, 228 Ill. 2d at 191.

In reviewing a defendant's claims of prosecutorial misconduct in closing argument, the court considers the closing argument in its entirety in order to place the complained of remarks in context. Johnson, 385 Ill. App. 3d at 604. "If the jury could have reached a contrary verdict had the improper remarks not been made, or the reviewing court cannot say that the prosecutor's improper remarks did not contribute to the defendant's conviction, a new trial should be granted." Wheeler, 226 Ill. 2d at 123.

The defendant complains that the prosecutor accused the defendant of fabricating his defense, misstated the defendant's

31

testimony when he argued that the defendant had referred to Mrs. Hess as a "crackhead," improperly shifted the burden of proof by arguing that there was no evidence that Mrs. Hess ever purchased drugs, inflamed the passions of the jury by accusing the defendant of using his status as a diabetic to excuse his behavior, and bolstered his case improperly by telling the jury police officers were more credible than the defendant based on their status as police officers. Finally, the defendant argued that the cumulative effect of these improper remarks required that the defendant receive a new trial.

Prosecutors are afforded wide latitude in closing argument. Wheeler, 226 Ill. 2d at 123. A prosecutor has the right to comment upon the evidence presented and upon reasonable inferences arising from that evidence, even if the inferences are unfavorable to the defendant, and may respond to comments made by defense counsel which clearly invite a response. People v. Hudson, 157 Ill. 2d 401, 441, 626 N.E.2d 161 (1993). Nonetheless, " 'it is improper for the prosecutor to do or say anything in argument the only effect of which will be to inflame the passion or arouse the prejudice of the jury against the defendant, without throwing any light on the question for

No. 1-08-0500

decision.' " People v. Fluker, 318 Ill. App. 3d 193, 202, 742 N.E.2d 799 (2000) (quoting People v. Smith, 141 Ill. 2d 40, 60, 565 N.E.2d 900 (1990)).

The prosecutor's statement that the defendant wanted the jury to believe that Mrs. Hess was a "crackhead" was in response to defense counsel's argument that Mrs. Hess's statement to Mr. Hess that "he's back" was based on the fact she had seen the defendant while she was purchasing drugs. The prosecutor's statement that there was no evidence that Mrs. Hess ever bought drugs did not amount to shifting the burden of proof to the defendant but was a proper attack on the theory of defense. See People v. Berry, 264 Ill. App. 3d 773, 780, 642 N.E.2d 1307 (1994).

The defendant asserts that the prosecutor repeatedly and improperly argued that the defendant fabricated his defense. In People v. Slabaugh, 323 Ill. App. 3d 723, 753 N.E.2d 1170 (2001), the reviewing court found the prosecutor's rebuttal argument improper where he repeatedly argued that the defense witnesses were lying and had gotten together to create a defense. The court determined that the testimony of the defendant and a witness, who were friends, that they had a discussion about what

33

No. 1-08-0500

would happen at the trial some two years before did not support the inference that they had manufactured a defense. Slabaugh, 323 Ill. App. 3d at 729-30.

The defendant's reliance on Slabaugh is misplaced. In the present case, the prosecutor's argument was based on the differing versions of the burglary contained in the defendant's statement and in his testimony at trial. See People v. Frieberg, 147 Ill. 2d 326, 356, 589 N.E.2d 508 (1992) (proper for prosecutor to cross-examine the defendant on the inconsistencies between his statement to police and his in-court testimony). Therefore, it was a reasonable inference from the evidence that the defendant had tailored his defense to fit the facts.

We find the prosecutor's reference to the defendant's use of his diabetic condition as an excuse for his confession to be a reasonable inference from the evidence. The defendant testified that he was an insulin-dependent diabetic and that he took insulin twice a day. He further testified that his confession was the result of being deprived of insulin. When confronted by the prosecutor, the defendant acknowledged he did not take his insulin the night of September 16, 2005, explaining that he did not feel like he needed the insulin because he had consumed

34

enough food that evening. Yet, by the time of his September 17, 2005, statement to police, he had twice missed taking insulin. In that statement, the defendant maintained that he had been well treated by police. In light of the defendant's varying testimony as to his dependance on insulin, the prosecutor's comment was not intended to inflame the passions of the jury and was a proper comment on the evidence.

Finally, the defendant contends that the prosecutor improperly bolstered the testimony of the police witnesses. Defense counsel had argued to the jury that Officer Rzab could not afford to change her account of the defendant's interview in her trial testimony and how convenient it was that the statement was not videotaped. In rebuttal, the prosecutor argued that the detectives would not have ignored the defendant's requests for insulin, given the potential liability if the defendant passed out or died as a result. The defendant relies on People v. Fields, 258 Ill. App. 3d 912, 921, 631 N.E.2d 303 (1994), and People v. Clark, 186 Ill. App. 3d 109, 542 N.E.2d 138 (1989). In both cases, the reviewing courts found the prosecutors' arguments that the police witnesses would not risk their pensions by committing perjury to be improper argument.

No. 1-08-0500

In People v. Gorosteata, 374 Ill. App. 3d 203, 870 N.E.2d 936 (2007), this court explained that the "invited response" doctrine applies where the prosecutor is responding to improper argument on the part of defendant's counsel. Gorosteata, 374 Ill. App. 3d at 222. " 'The credibility of a witness is a proper subject for closing argument if it is based on the evidence or the inferences drawn from it.' " Gorosteata, 374 Ill. App. 3d at 223 (quoting Hudson, 157 Ill. 2d at 445). As trial counsel's argument was not improper, the prosecutor's reference on rebuttal to why the jury should believe the police officers cannot be justified under the invited response doctrine. As such, the prosecutor's argument was improper.

Even if reversible, this error does not require that the defendant receive a new trial in this case. See Gorosteata, 374 Ill. App. 3d at 225 (not all reversible errors are plain errors). As we previously determined, the evidence against the defendant was overwhelming; therefore, the defendant has failed to satisfy the first prong of the plain-error analysis. As the defendant does not argue the second prong of the plain error analysis, we conclude that there is no basis for excusing the defendant's procedural default.

No. 1-08-0500

## VI. Voir Dire

The defendant contends that the trial court erred when it refused to allow defense counsel to question the venire to determine if they could be fair and impartial, knowing that the defendant had a prior conviction.

### A. Pertinent Evidence

Initially, the trial court allowed defense counsel to question the venire as to the defendant's prior convictions as follows:

"MS. MALONE-LOCKETT (defense counsel): Mr. McNicholas, if you learned that a witness or a defendant had a conviction in his background, would that impair your ability to be fair and impartial?

MR. McNICHOLAS: For repeated offense?

MS. MALONE-LOCKETT: At all.

MR. McNICHOLAS: Or just whether [sic] general?

MS. MALONE-LOCKETT: At all.

MR. McNICHOLAS: I guess it depends on [the] nature of it.

MS. MALONE-LOCKETT: What do you mean by that?

MR. McNICHOLAS: Well, I mean again if it is [a]

37

similar event and there was [a] conviction I guess I would have to look at - [.]"

The trial court recessed the proceedings and in chambers heard argument from both parties on the merits of the defendant's request. The court then ruled as follows:

"I am not going to allow the question. It seems loaded with other issues that it will lead to. What is [the] conviction for. That's what the jury instruction is for.

I asked all of them it they will follow the law. Follow the jury instruction. There will be no question pertaining if the defendant or witness had a prior conviction. And I guess your next question would be would it affect your ability to be a juror in this case.

That's not a proper question for the venire."

### B. Standard of Review

We review an issue as to compliance with a supreme court rule de novo. People v. Lloyd, 338 Ill. App. 3d 379, 384, 788 N.E.2d 1169 (2003). However, a trial court's denial of a party's request to question jurors on a particular viewpoint is reviewed for an abuse of discretion. People v. Reeves, 385 Ill. App. 3d 716, 729-30, 897 N.E.2d (2008).

38

No. 1-08-0500

## C. Discussion

### 1. Forfeiture

The defendant concedes that the error was not raised in his posttrial motion. He argues that the error was sufficiently preserved in the record by his objection at trial and may be reviewed under the constitutional or plain error exceptions recognized in People v. Enoch, 122 Ill. 2d 176, 190, 122 N.E.2d 1124 (1988) (where a defendant failed to file a posttrial motion, review was limited to constitutional issues properly raised at trial, sufficiency of the evidence and plain error).

The constitutional exception does not apply in this case because the authority to question prospective jurors derives from the supreme court's inherent power to make rules governing the conduct of the circuit courts. See People v. Glasper, 234 Ill. 2d 173, 196, 917 N.E.2d 401 (2009) (defendants do not have a right to Illinois Supreme Court Rule 431(b)(4) (eff. May 1, 2007) questioning under either the United States or Illinois Constitution). Therefore, we will apply the plain-error analysis and determine, first, if error occurred.

### 2. Plain Error

Initially, we note that the trial judge did not deny defense

39

counsel the opportunity to question the jurors directly. It allowed the questioning until it appeared defense counsel's questions were intruding into the area of jury instructions, thus violating Rule 431(a). We must determine if the trial court abused its discretion by not allowing defense counsel to question the venire as to the effect the defendant's prior conviction would have on their ability to be fair and impartial. Rule 431(a) provides as follows:

"The court shall conduct voir dire examination of prospective jurors by putting to them questions it thinks appropriate, touching upon their qualifications to serve as jurors in the case at trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate and shall permit the parties to supplement the examination by such direct inquiry as the court deems proper for a reasonable period of time depending upon the length of examination by the court, the complexity of the case, and the nature of the charges. Questions shall not directly or indirectly concern matters of law or instructions." Ill. S. Ct. R. 431(a) (eff. May 1, 2007)).

40

No. 1-08-0500

We find no error in the refusal of the trial court to question prospective jurors as to whether a witness or a defendant's prior conviction would affect their ability to be fair and impartial. Such an inquiry violated Rule 431(a) prohibition against questions covered by the instructions. Illinois Pattern Jury Instructions, Criminal, No. 3.13 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 3.13) provides that jurors may consider evidence of a defendant's prior conviction only as it affects his credibility as a witness and not as evidence of guilt.

The defendant argues that defense counsel's question concerned not only the defendant's credibility but that of the witnesses as well. IPI Criminal 4th No. 1.02 sets forth what the jurors may take into account in their role as the sole judges of the believability of the witnesses. Since the defendant's inquiry of the prospective jurors directly or at the very least, indirectly, concerned the instructions to be given to the jury, it was prohibited by Rule 431(a).

Our conclusion finds support in People v. Brandon, 157 Ill. App. 3d 835, 510 N.E.2d 1005 (1987). On appeal, the defendant argued that the trial court erred in refusing to question

41

potential jurors if they would be prejudiced against the defendant if they learned he had a felony conviction. The defendant maintained that his question did not pertain to matters of law, but was proper in order to uncover bias.

The reviewing court found the tendered question improper because the subject was covered in IPI Criminal 2d No. 3.13 and because it would have tended to unfairly tip the balance in favor of the defendant's case. The court reasoned that, as the defendant claimed that the case was a battle of credibility between the defendant and the arresting officer, the tendered question would have improperly highlighted an aspect of the defense claim rather than a legitimate attempt to expose bias or prejudice. In addition, at the voir dire stage of the proceedings, the trial court could not have anticipated whether the defendant would testify and, if so, whether the State would impeach him with his prior convictions. Brandon, 157 Ill. App. 3d at 844.

In this case, the defendant argues that the question did not relate to the theory of his case. We disagree. As was the case in Brandon, the trial here presented a credibility contest between the defendant's version of why he was present in the Hess

No. 1-08-0500

residence and the version presented by the State's witnesses.

The defendant's reliance on People v. Strain, 194 Ill. 2d 467, 742 N.E.2d 315 (2000), and People v. Lanter, 230 Ill. App. 3d 72, 595 N.E.2d 210 (1992), is misplaced. In People v. Dixon, 382 Ill. App. 3d 233, 887 N.E.2d 577 (2008), this court reiterated its holding that Strain was limited to cases involving evidence relating to gangs and gang membership and refused to extend Strain to other areas of potential bias. Dixon, 382 Ill. App. 3d at 245. The court in Dixon also distinguished Lanter on the basis that the defendant in Lanter asserted the affirmative defense of intoxication and that no affirmative defense was asserted in the case before it. The court also noted the court's observation in Lanter, that " '[n]ot every affirmative defense is so controversial as to render voir dire questioning appropriate.' " Dixon, 382 Ill. App. 3d at 244 (quoting Lanter, 230 Ill. App. 3d at 76).

This case does not involve gang-related evidence or an affirmative defense. The defendant also relies on People v. Stack, 112 Ill. 2d 301, 493 N.E.2d 339 (1986). However, in Brandon, the reviewing court found Stack inapplicable because the question relating to the defendant's prior convictions did not go

43

to a basic or fundamental matter directly involving the defendant's guilt or responsibility, such as the defense of insanity raised in Stack. Brandon, 157 Ill. App. 3d at 843. Likewise, Stack does not support the defendant's argument that the question relating to the defendant's prior convictions was proper.

We conclude that the trial court did not abuse its discretion when it refused to allow defense counsel to question the venire as to the affect prior convictions would have on their ability to be fair and impartial. As there was no error, we need not engage in the plain-error analysis.

## VII. Cumulative Error

The defendant contends that the cumulative effect of the alleged errors requires that he receive a new trial. Based on our resolution of the defendant's claims of error in this case, we find no merit to the defendant's contention.

## CONCLUSION

The defendant's conviction and sentence are affirmed.

Affirmed.

44