# Illinois Official Reports

## Appellate Court

---

### *People v. Daniel*, 2018 IL App (2d) 160018

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL L. DANIEL, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0018 |
| Filed | June 13, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Stephenson County, No. 15-CF-93; the Hon. Michael P. Bald, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Lucas Walker, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Carl H. Larson, State's Attorney, of Freeport (Patrick Delfino, David J. Robinson, and Cora Moy, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Burke concurred in the judgment and opinion. |

¶ 1      Defendant, Michael L. Daniel, appeals his conviction of aggravated battery to a community policing volunteer (720 ILCS 5/12-3.05(d)(4) (West 2014)). He contends that the trial court plainly erred in its questions to prospective jurors under Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) because (1) the court failed to inquire whether the jurors understood the principles listed in the rule and (2) the evidence was closely balanced. We agree and reverse and remand for a new trial.

¶ 2      I. BACKGROUND

¶ 3      Defendant was charged with multiple crimes, including one count of aggravated battery to a community policing volunteer and one count of aggravated battery to a police officer (720 ILCS 5/12-3.05(d)(4) (West 2014)) for allegedly kicking police officer Ryan Wagand and pushing community policing volunteer Tim Barth. In June 2015, a jury trial was held.

¶ 4      During jury selection, the court questioned the entire venire as follows:

"These are what we call the fundamental propositions and I have to ask these of you each individually. I must determine that each potential juror understands and accepts each of the following principles. The rules require that I ask each of you individually whether you do understand and accept each of these because these principles are fundamental to the American system of justice.

These are the kind of things that I hope you people in the back row listen to as well. First of all, the defendant is presumed innocent of the charges against him. He is not required to produce any evidence on his own behalf. Before any defendant may be convicted, the State must prove the defendant guilty beyond a reasonable doubt. The defendant need not testify and if he chooses not to testify, that fact cannot be held against him.

Okay. Now, I'm going to ask you individually whether you agree with those, okay."

¶ 5      The court then asked each prospective juror whether he or she heard the propositions, whether he or she agreed with them, and whether he or she disagreed with any part of them. When additional prospective jurors were called up in small groups, the court each time repeated the propositions, asked whether the prospective jurors heard them and agreed with them, and asked whether they disagreed with any part of them. One prospective juror, who had previously served on the jury in a criminal case, was asked if she understood that the State's burden to prove the defendant guilty beyond a reasonable doubt was the same. The prospective jurors were not otherwise asked if they understood the propositions.

¶ 6      At trial, Antalina Dominguez testified that, on April 11, 2015, she was having a birthday party for her niece when two officers stopped by and asked that they turn their music down. There was another party three houses down the street, and the police went there and told them to turn down their music too. Fights then broke out at the other house. Dominguez testified that the officers were being pushed or attacked and were getting swarmed into a corner. Dominguez called 911. Dominguez's sister testified that she witnessed arguing and saw the officers get pushed back toward the house. She said that the situation was escalating and chaotic. Four other officers arrived, and arrests were made. She said that she did not see anyone physically

push the officers, because it was hard to see anything. Neither woman identified defendant as a person they saw pushing any officer.

¶ 7 Another neighbor, Lillian Collins, also called the police because she saw about 50 to 100 people and 5 officers yelling and arguing behind her house. She said that two or three people pushed the police and that the police slammed those people to the ground and arrested them. Some people in the crowd were trying to calm others down, and the crowd started to leave when an officer announced that pepper balls would be used. Collins could not identify defendant as being in the crowd.

¶ 8 Officer Andrew Laurent testified that he responded to a call about loud music and saw defendant sitting in a chair behind the house. Wagand and Barth were initially at another house but then came to Laurent's location. A man, David Thurman, pulled up in a car, and at least three people at the party approached him aggressively. According to Laurent, defendant was not among them. The officers kept Thurman separated from the group and kept people away by pushing them back. Thurman told Laurent that he was there because he did not want his young son to be at the party. Thurman's son was crying, so Laurent knelt down and asked the son if he wanted to go with Thurman. A man who lived at the house, Marlon Wilson, then came over, put his arm around Thurman's son, and yelled at the son not to talk to Laurent. When Laurent pulled Marlon's arm off of the son, Marlon charged him. Laurent shoved Marlon, a large crowd poured in, and the scene became extremely chaotic. Marlon was arrested. Laurent recalled seeing defendant on the ground being arrested by other officers and testified that defendant kicked an officer. On direct examination, he said that he saw defendant, who was flailing around and kicking, punch Barth in the back of the shoulder, but on cross-examination he said that he did not see defendant push Barth.

¶ 9 Barth testified that he was a Freeport community policing volunteer. He said that he saw Thurman shove defendant and that they were yelling at each other. He said that defendant tried to get to Thurman, Barth stepped in front of him, and defendant then pushed him in the chest. Barth grabbed defendant and started pushing him backward while other officers tried to handcuff him. He saw defendant flailing on the ground but did not see him kick anyone.

¶ 10 Wagand testified that defendant was part of the initial group that approached Thurman. Wagand saw officers struggling with defendant. However, he did not see what led to defendant's arrest or see him push or punch Barth. He testified that, when he ran over to assist, defendant kicked him in the knee. Wagand said that he did not notice Marlon as part of the initial group that approached Thurman, but he acknowledged that he wrote a report stating that he saw Marlon, defendant, and Thurman pushing each other.

¶ 11 Another officer, who was five or six feet away, testified that he saw, out of the corner of his eye, defendant push Barth with two hands. Still another officer who was nearby testified that he saw defendant shove Barth in the chest with two hands. Neither saw defendant kick Wagand. Yet one more officer, who arrived while defendant was being arrested, said that he did not see defendant shove or kick anyone.

¶ 12 Marjorie Wilson, who lived at the house, testified for defendant. She said that defendant lived at the house and was dating her daughter. On April 11, 2015, they were holding a party. Defendant was not drinking. She denied that defendant was involved in the fight. She said that two men other than defendant and Marlon initially approached Thurman. According to Marjorie, when Laurent tried to talk to Thurman's son, Marlon told the son not to talk to him, and defendant grabbed Marlon and told him, "come on let's go. You can't do nothing to them."

The officers then grabbed defendant and threw him to the ground. Marjorie said that she was with defendant and did not see him punch, push, or kick any of the officers. She said that the police were not pushed or shoved by anyone. She was about six feet away when she witnessed the events. During the events, a crowd formed of people from around the area who were not invited to the party, although they were not in the immediate area of the fight.

¶ 13    Defendant's girlfriend testified and corroborated Marjorie's testimony by stating that she was watching defendant the whole time, that he did not punch, push, or kick anyone, and that the police were not pushed or shoved by anyone. She said that she was about 15 feet away and that nothing was obstructing her vision. Another of Marjorie's daughters also provided similar testimony, stating that defendant was trying to calm Marlon down, that officers threw him to the ground, and that she did not see him punch, push, or kick anyone. She too testified that the police were not shoved or swarmed by the crowd. She was about 20 feet away and saw everything clearly.

¶ 14    Thurman testified that, when he arrived, he initially argued with three men, none of whom he identified as Marlon or defendant. He specifically said that defendant was not involved in the argument. Thurman testified that the officers were not cornered by the crowd and that defendant did not touch any officer, but that the police pushed him back, grabbed him, and slammed him to the ground. He did not see defendant kick or push anyone. Thurman was about 18 to 20 feet away at the time. Thurman was impeached with prior drug convictions. Marlon also testified consistently with the others, stating that defendant was not in the initial group that approached Thurman, that the police were not surrounded, and that defendant did not push, punch, or kick anyone. Marlon had a prior theft conviction.

¶ 15    Four guests at the party generally testified consistently that defendant was not arguing with Thurman, was trying to calm things down, and did not punch, push, or kick anyone. One, who was across the alley, said that everyone was crowded around the officers. Another said that the police were amidst a bunch of people but that no one was pushing or swarming them. A third, who was not very close and kept his distance, did not see defendant push, punch, or kick anyone but also did not see what happened right before defendant was taken to the ground. A fourth, who was on the patio with an unobstructed view, but who was impeached with prior convictions, said that officers pushed defendant and tackled him.

¶ 16    The jury found defendant not guilty of aggravated battery to a police officer but guilty of aggravated battery to a community policing volunteer. Defendant moved for a new trial but did not raise any issue with the questioning of the prospective jurors. The motion was denied, and he was sentenced to 4½ years' incarceration. He appeals.

¶ 17                                    II. ANALYSIS

¶ 18    Defendant contends that the trial court failed to comply with Rule 431(b) because, although the court inquired whether the prospective jurors agreed with the principles set forth in the rule, it failed to inquire whether they understood those principles. Defendant concedes that he forfeited the issue by failing to raise it in the trial court but argues that it is plain error requiring reversal because the evidence was closely balanced.

¶ 19    To preserve a claim for review, a defendant must both object at trial and include the alleged error in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). The plain-error doctrine allows a reviewing court to consider unpreserved error where either (1) a clear or obvious error occurs and the evidence is so closely balanced that such error threatens to tip the

- 4 -

scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and is so serious that it affects the fairness of the defendant's trial and challenges the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Walker*, 232 Ill. 2d 113, 124 (2009). In both instances, the burden of persuasion remains on the defendant. *People v. Herron*, 215 Ill. 2d 167, 187 (2005) (citing *People v. Hopp*, 209 Ill. 2d 1, 12 (2004)). The first step in conducting plain-error review is to determine whether error occurred at all. *Walker*, 232 Ill. 2d at 124.

¶ 20     Rule 431(b) contains the four commonly known "*Zehr* principles." See *People v. Zehr*, 103 Ill. 2d 472, 477 (1984). It provides:

"(b) The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 21     The court's method of inquiry shall provide each prospective juror an opportunity to respond to specific questions concerning the principles set out in the rule. *Id.* Our supreme court has emphasized that the trial court must ensure that each prospective juror both understands and accepts each of the four principles. *People v. Belknap*, 2014 IL 117094, ¶¶ 44-46; *People v. Wilmington*, 2013 IL 112938, ¶ 32; *People v. Thompson*, 238 Ill. 2d 598, 607 (2010). The questions may be asked of the prospective jurors individually or by group, but in either event Rule 431(b) contemplates " 'a specific question and response process.' " *Wilmington*, 2013 IL 112938, ¶ 32 (quoting *Thompson*, 238 Ill. 2d at 607).

¶ 22     In *Thompson*, our supreme court held that it was error for a trial court to ask jurors whether they understood the *Zehr* principles without also asking whether they accepted them. *Thompson*, 238 Ill. 2d at 607. However, we later held that the opposite was sufficient. *People v. Blankenship*, 406 Ill. App. 3d 578, 581 (2010).

¶ 23     In *Blankenship*, the prospective jurors were asked if they "agreed with" the *Zehr* principles but were not asked if they understood them. *Id.* We noted that "agreement" implies "acceptance." *Id.* at 583. We also noted that a rational juror would not claim to accept the *Zehr* principles unless the juror believed that he or she understood them. *Id.* at 582. Thus, for purposes of Rule 431(b), we held that acceptance implied understanding and that it was not error for the trial court to fail to ask the prospective jurors if they understood the principles when it had asked if they accepted or agreed with them. *Id.* We distinguished *Thompson* because, unlike acceptance implying understanding, understanding did not imply acceptance. *Id.* at 583. The First District subsequently held similarly. See *People v. Quinonez*, 2011 IL App (1st) 092333, ¶¶ 48-50.

¶ 24     However, our supreme court has since held that it is error for a trial court to ask whether prospective jurors disagree with the principles but fail to also ask whether they understand them. *Belknap*, 2014 IL 117094, ¶ 46; *Wilmington*, 2013 IL 112938, ¶ 32. In those cases, the court held that "the trial court committed error when it failed to ask prospective jurors whether they *both* understood and accepted the principles set forth in Rule 431(b)." (Emphasis in original.) *Belknap*, 2014 IL 117094, ¶ 46. The court stated that "it may be arguable that asking

jurors whether they disagreed with the Rule 431(b) principles is tantamount to asking them whether they accepted those principles. However, the trial court's failure to ask whether the jurors understood the principles constitutes error alone." *Id.* (citing *Wilmington*, 2013 IL 112938, ¶ 32).

¶ 25 Here, error occurred. While the trial court asked whether the prospective jurors agreed with the principles, it did not ask whether they understood them. The State does not discuss *Belknap* and attempts to distinguish *Wilmington* on the basis that the trial court there asked whether the prospective jurors disagreed with the principles, while here the court asked if the prospective jurors agreed with them. But in *Wilmington*, as in *Belknap*, the court explicitly stated that the failure to ask the prospective jurors whether they understood the principles constitutes error alone. *Belknap*, 2014 IL 117094, ¶ 46; *Wilmington*, 2013 IL 112938, ¶ 32. Thus, under *Wilmington* and *Belknap*, the trial court must ask each prospective juror whether he or she both understands and accepts the principles. Having found error, the next question is whether it was plain error.

¶ 26 A Rule 431(b) violation is not cognizable under the second prong of the plain-error doctrine absent evidence that the violation produced a biased jury. *People v. Sebby*, 2017 IL 119445, ¶ 52. Defendant does not contend that the error produced a biased jury and argues only that the evidence was closely balanced under the first prong of the doctrine.

¶ 27 "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Id.* ¶ 53. "That standard seems quite simple, but the opposite is true. A reviewing court's inquiry involves an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Id.*

¶ 28 In *Sebby*, the defendant was charged with felony resisting a peace officer (720 ILCS 5/31-1(a-7) (West 2010)). *Sebby*, 2017 IL 119445, ¶ 1. That charge required the State to prove in part that the defendant knowingly resisted a peace officer and that his resistance was the proximate cause of an injury to that officer. 720 ILCS 5/31-1(a-7) (West 2010). On the resistance element, the three responding officers testified that the defendant resisted. *Sebby*, 2017 IL 119445, ¶¶ 55-56. Three other witnesses, including the defendant, testified that the defendant did not resist and was instead being yanked around by the officers. *Id.* ¶¶ 57-58.

¶ 29 The *Sebby* court concluded that the evidence was closely balanced. *Id.* ¶ 61. The court observed that the State's witnesses provided accounts that were consistent with each other, as did the defendant's witnesses. *Id.* Neither party's version of events was fanciful. *Id.* The court rejected the State's argument that the testimony of the defendant's witnesses was less plausible because those witnesses were relatives or friends of the defendant and might be biased. *Id.* ¶ 62. The court also noted that neither party's version of events was supported by extrinsic corroborating evidence. *Id.* The court found that, as in *People v. Naylor*, 229 Ill. 2d 584 (2008), the outcome of the trial depended on a " 'contest of credibility' " between the officers and the defendant. *Sebby*, 2017 IL 119445, ¶ 63 (quoting *Naylor*, 229 Ill. 2d at 606-07). The court explained that, because the outcome depended on two versions of events that were both credible, the evidence was closely balanced. *Id.* (citing *Naylor*, 229 Ill. 2d at 608).

¶ 30 Generally, where courts have found no "credibility contest," one party's version of events was either implausible or corroborated by other evidence. See, *e.g.*, *People v. Effinger*, 2016 IL App (3d) 140203, ¶ 26 (circumstantial evidence supported victim's version of events); *People v. Tademy*, 2015 IL App (3d) 120741, ¶¶ 19-20 (no "credibility contest" between experts

where lay testimony corroborated one expert's testimony); *People v. Lopez*, 2012 IL App (1st) 101395, ¶¶ 88-90 (evidence not closely balanced where circumstantial evidence supported State's witnesses' testimony while defendant's version of events "strained credulity"); *People v. Anderson*, 407 Ill. App. 3d 662, 672 (2011) (evidence not closely balanced where defendant's version of events was implausible).

¶ 31     Here, the evidence was closely balanced. As in *Sebby*, the case presented a credibility contest between the State's witnesses and defendant's witnesses. Both parties presented plausible versions of the events, with each side providing some evidence that was consistent with that of other witnesses and some that was not consistent.

¶ 32     The State argues that defendant's version of events was implausible because his witnesses consisted of his friends and family, but the court in *Sebby* rejected such an argument. The State also argues that the neighbors' testimony corroborated the police officers' testimony. But while the neighbors did corroborate the officers' testimony regarding a crowd of people, none of the neighbors identified defendant as a person who pushed the officers. Finally, the State takes issue with the distances that defendant's witnesses were from the events. But where witnesses were not close, they generally said that they had unobstructed views. Their distance certainly did not render their testimony implausible. Thus, because the evidence was closely balanced, the court plainly erred when it failed to inquire with prospective jurors whether they both understood and accepted the Rule 431(b) principles.

¶ 33                                   III. CONCLUSION

¶ 34     The trial court plainly erred. Accordingly, the judgment of the circuit court of Stephenson County is reversed, and the cause is remanded for a new trial.

¶ 35     Reversed and remanded.