# Illinois Official Reports

## Appellate Court

---

### *People v. Tademy*, 2015 IL App (3d) 120741

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RODERICK TADEMY, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-12-0741 |
| Filed<br>Rehearing denied | February 13, 2015<br>April 20, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In defendant's prosecution for attempted first degree murder, aggravated battery with a firearm and aggravated battery of a child arising from an incident in which he shot his 12-year-old son in the head, his convictions for aggravated battery with a firearm and aggravated battery of a child following a jury trial after he was found fit to stand trial were vacated under one-act, one-crime principles, but the attempted first degree murder conviction was upheld. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 10-CF-2658; the Hon. Sarah F. Jones, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Daniel T. Mallon (argued), of State Appellate Defender's Office, of Chicago, for appellant.<br><br>James Glasgow, State's Attorney, of Joliet (Thomas D. Arado (argued), of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justices Holdridge and Wright concurred in the judgment and opinion.


**OPINION**

¶ 1     The defendant, Roderick Tademy, appeals his conviction for attempted first degree murder, aggravated battery with a firearm, and aggravated battery of a child for shooting his 12-year-old son in the head.

¶ 2                                    FACTS

¶ 3     The defendant was charged by indictment with attempted first degree murder, aggravated battery with a firearm, and aggravated battery of a child for shooting his 12-year old son, O.T., in the head. The defendant was found fit to stand trial, and the case proceeded to a jury trial.

¶ 4     Antoinette Tademy, the defendant's wife, testified that on December 20, 2010, she was at home with the defendant, their twin five-year old daughters, and O.T. Antoinette testified that the defendant had started drinking alcohol at around 7 a.m. on that day. By late afternoon, he had drunk a half of a large bottle of vodka, some beer, and some wine coolers, but Antoinette did not notice signs of intoxication. Later in the day, she decided to take the kids to the mall, so she went into her room to get dressed. O.T. was sitting in the living room, and the twins were eating dinner in the kitchen. Antoinette heard a loud clap, and then the defendant came into the bedroom, pointing a gun at her. She testified that he seemed abnormal and that he was angry and disconnected. The defendant asked her how she could let O.T. molest one of the twins. She told him that was not true. The defendant tried to hit Antoinette in the head with the gun, and she ran out of the bedroom toward the kitchen door.

¶ 5     Antoinette called out to O.T. to run away, but the defendant said that O.T. was dead. Antoinette went into the living room, where she saw O.T. sitting on the couch with a gunshot wound to the head. Antoinette testified that she called 911 and at that point the defendant "snapped out of it" and went to get a towel. Antoinette described it as the defendant coming back to normalcy. The defendant said that he was sorry and that he was losing his mind. Antoinette testified that the defendant had been acting abnormally, on and off, for about 3½ years, but she only noticed that abnormal behavior when he was drinking. She testified that the more he drank, the more delusions he seemed to have.

¶ 6     The defendant presented an insanity defense, offering the testimony of Dr. Bruce Frumkin, a clinical psychologist. Dr. Frumkin evaluated the defendant on two dates, for a total of about 5½ hours. He did clinical interviews, administered several psychological tests, reviewed the defendant's interrogation, reviewed the reports and notes of the State's witness, Dr. Randi Zoot, and reviewed various Department of Correction, jail and police reports. In response to a question on cross-examination by the State, Dr. Frumkin testified that it was his understanding that the defendant was diagnosed at the jail with some sort of depression due to an adjustment disorder at the jail. According to Dr. Frumkin, the defendant suffered from schizophrenia, chronic paranoid type. Dr. Frumkin opined that it was extremely unlikely that the defendant's

psychotic behaviors were caused by alcohol abuse. In fact, he opined that the alcohol had nothing to do with the defendant's delusional behavior. In his opinion, the defendant was insane at the time of shooting, in that the defendant did not appreciate the criminality of his actions when he shot his son in the head.

¶ 7 The State called Dr. Zoot, a clinical psychologist, as a rebuttal witness. She reviewed police reports, the videotape of the interrogation, the records from the county jail, and the medical records. She also met with the defendant on two occasions, and she was the doctor that found that the defendant was fit to stand trial. Zoot diagnosed the defendant with depression with psychotic features, and alcohol abuse, but she found that he was sane when he shot his son. She found nothing unusual or outstanding about the defendant's affect, and she found his responses to be appropriate. Dr. Zoot opined that the defendant had some mental issues and suffered from some delusions, but he was not insane because he appreciated the criminality of his conduct. Dr. Zoot testified that she reviewed the records from the jail to see if the defendant had any treatment, what his presentation was like at the jail, and what the jail evaluations showed. She testified that the jail psychiatrist had diagnosed the defendant with adjustment disorder with a depressed mood.

¶ 8 During closing arguments, the State went through all of the elements of the three offenses that the defendant was charged with and the evidence relevant to each element. The State also discussed the defendant's defense of insanity, or whether he was mentally ill, and the evidence relevant to the mental issue. Specifically, the State discussed the testimony of Drs. Zoot and Frumkin, some of the physical evidence, and Antoinette's testimony. Defense counsel then made his closing argument, highlighting some of the evidence, and also discussing the testimony of both doctors. In rebuttal, the State argued that the defendant failed to meet his burden of proving that he was insane and focused on the evidence that showed that the defendant appreciated the criminality of his actions. In particular, the State argued that the defendant had a loaded gun on his person in his home, and he was feeling disrespected by and angry at O.T., but he was carrying on normal tasks of everyday life by playing video games and making dinner for the twins. In addition, after shooting O.T., the defendant turned his rage to Antoinette and threatened her with the same gun. Then, the defendant told Antoinette that O.T. was dead. The State then argued the inferences that could be made from the defendant leaving the residence before the police arrived. As its last point in this argument, the State argued that the defendant was evaluated when he got to the jail and the jail psychiatrist found nothing wrong with him.

¶ 9 The jury was given verdict forms stating guilty, not guilty, guilty but mentally ill, and not guilty by reason of insanity. The jury found the defendant guilty of all charges. The defendant was sentenced to 50 years for attempted first degree murder, 50 years for aggravated battery of a child, and 30 years for aggravated battery with a firearm, all to run concurrently.

¶ 10 ANALYSIS

¶ 11 The defendant argues that the evidence demonstrated that he suffered from paranoid schizophrenia, which left him unable to appreciate the criminality of his actions. Thus, he argues that the jury's finding that he was sane was against the manifest weight of the evidence.

¶ 12 Under section 6-2(a) of the Criminal Code of 1961, a person is not criminally liable for his conduct if, at the time of such conduct, as a result of a mental disease or defect, he lacks the substantial capacity to appreciate the criminality of his conduct. 720 ILCS 5/6-2(a) (West

2010). Insanity is an affirmative defense, so the defendant bears the burden of proving it by clear and convincing evidence. 720 ILCS 5/6-2(e) (West 2010); *People v. Kando*, 397 Ill. App. 3d 165, 193 (2009). However, the State retains the burden of proving defendant guilty of the charged offense beyond a reasonable doubt. *Id.* at 194. The questions of a defendant's sanity and mental illness are questions of fact, and the fact finder's determination on these issues will not be disturbed unless contrary to the manifest weight of the evidence. *People v. Urdiales*, 225 Ill. 2d 354, 428 (2007).

¶ 13    It is the function of the trier of fact to assess the credibility of the witnesses and the weight to be given to their testimony. *People v. McCullum*, 386 Ill. App. 3d 495, 505 (2008). This rule also applies to expert opinions. *Id.* The fact finder is free to accept the opinion of one expert witness over another. *Kando*, 397 Ill. App. 3d at 196. The defendant argues that the opinion of the State's expert was entitled to less weight because she did not perform any psychological testing and she "unduly relied" on the diagnosis of the jail psychiatrist. However, a review of the record indicates that she felt she could assess the defendant's intelligence and psychological testing was not necessary. As for the jail psychology records, Zoot testified that she considered them along with the other information available to her. Many of the facts were not in dispute; the jury was provided with two expert opinions that reached opposite conclusions, along with lay testimony regarding the defendant's actions. It was free to accept the opinion of the State's expert that the defendant appreciated the criminality of his actions. As such, the jury's finding that the defendant was sane was not against the manifest weight of the evidence.[1]

¶ 14    The defendant contends that his sixth amendment right to confront witnesses was violated when Drs. Zoot and Frumkin referred to medical records from the jail and the doctors who created those records did not testify. The defendant acknowledges that the issue was not raised in the trial court, nor in a posttrial motion, but asks for plain error review. Alternatively, the defendant argues that his counsel was ineffective for failing to raise the issue. The State contends that there was no error in that Drs. Zoot and Frumkin both properly relied on the records to form the basis of their opinions regarding the defendant's mental state.

¶ 15    The sixth amendment guarantees all defendants the right to be confronted with the witnesses against him. U.S. Const., amend. VI. When testimonial statements are offered into evidence, the sixth amendment requires that the witnesses be unavailable and that the defendant have had a prior opportunity to cross-examine that witness. *Crawford v. Washington*, 541 U.S. 36, 42-43 (2004). In determining whether a report is testimonial, the Illinois Supreme Court applies a primary purpose test, asking whether the report was prepared for the primary purpose of accusing a targeted individual or for the primary purpose of providing evidence in a criminal case. *People v. Leach*, 2012 IL 111534, ¶ 122. Typically, we review *de novo* a defendant's claim that his sixth amendment right to confront a witness against him was violated because it presents a question of law. *Id.* ¶ 64. However, since the issue was not properly preserved, we review for plain error.

---

[1]The defendant argues that there was no other reason for the shooting, so he must have been insane to shoot his son in the head. However, the commission of an incomprehensible crime is not in itself evidence of insanity. *People v. Lono*, 11 Ill. App. 3d 443, 449 (1973) (citing *People v. Robinson*, 22 Ill. 2d 162 (1961)).

¶ 16    The first step in a plain error analysis is to determine whether a "plain error" occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007). The word "plain" in this context "is synonymous with 'clear' and is the equivalent of 'obvious.' " *Id*. at 565 n.2. If the reviewing court determines that the trial court committed a clear or obvious (or "plain") error, it proceeds to the second step in the analysis, which is to determine whether the error is reversible. Our supreme court has made clear that plain errors are reversible only when (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the error is "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* at 565; *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005).

¶ 17    The confrontation clause does not bar the admission of testimonial statements that are admitted for purposes other than proving the truth of the matter asserted. *People v. Williams*, 238 Ill. 2d 125, 142 (2010), *aff'd*, 567 U.S. ___, 132 S. Ct. 2221 (2012). An out-of-court statement is hearsay if it is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Jan. 1, 2011); *Leach*, 2012 IL 111534, ¶ 66. The defendant argues that the jail psychiatrist's diagnosis, "adjustment disorder with depressed mood," was offered substantively for its truth. However, Illinois Rule of Evidence 703 (eff. Jan. 1, 2011) permits an expert to base an opinion on facts or data not in evidence. See *People v. Lovejoy*, 235 Ill. 2d 97, 144 (2009) (a medical examiner's testimony regarding a toxicologist's report was not admitted for the truth of the matter asserted but, rather, introduced to show the steps the expert took in rendering his opinion); *People v. Pasch*, 152 Ill. 2d 133, 176 (1992) (an expert can testify as to nontestifying experts' findings and conclusions as support for his own findings).

¶ 18    Both experts testified that they reviewed the jail records. In response to a question on cross-examination by the State, Dr. Frumkin testified that it was his understanding that the defendant was diagnosed with some sort of depression due to an adjustment disorder at the jail. Dr. Zoot testified that she reviewed the records from the jail to see if the defendant had any treatment, what his presentation was like at the jail, and what the jail evaluations showed. She indicated that the records that were important to her were that the jail psychiatrist had diagnosed the defendant with adjustment disorder with a depressed mood and that there were no records of any symptoms of a significant mental disorder. Thus, the State argues that the jail psychiatrist's diagnosis was not offered for the truth of the matter asserted, but offered to show the facts and conclusions underlying the experts' opinions. We agree. However, the State referred to the jail psychiatrist in its closing, saying that the defendant was evaluated and never diagnosed with anything. Thus, it appears that even if the testimony was initially not offered as substantive evidence, it was argued as such by the State, which would be reversible error if the evidence is closely balanced.[2]

---

[2]Since we find that the doctors' reference to the jail psychiatrist's diagnosis was not hearsay, but rather offered as the basis for their findings, the improper reference to the jail psychiatrist in the State's rebuttal argument was not an error so serious that it affected the fairness of the defendant's trial. See *People v. Herron*, 215 Ill. 2d 167, 187 (2005) (to prevail under the second prong of the plain error analysis, the defendant must show a serious error that caused a severe threat to the fairness of the trial and challenged the integrity of the judicial process).

¶ 19    As stated above, to establish plain error under the first prong, the defendant must demonstrate prejudicial error, *i.e.*, there was error and the evidence was so closely balanced that the error threatened to tip the scales of justice against him. *Herron*, 215 Ill. 2d at 187. The defendant argues that the evidence was closely balanced because there was essentially a credibility contest between the two experts. The State argues that Dr. Frumkin's testimony was incredible, because he testified that alcohol had nothing to do with the defendant's actions, and Frumkin never connected the delusional thinking with the defendant's inability to appreciate the criminality of the shooting.

¶ 20    Cases based solely on a credibility dispute have been found to be closely balanced. *People v. Naylor*, 229 Ill. 2d 584 (2008); see also *People v. Lundell*, 182 Ill. App. 3d 417, 420 (1989) (evidence of insanity was closely balanced when the experts agreed that the defendant suffered from a mental disorder, but disagreed regarding whether the defendant was insane at the time of the crime). However, in this case, there was lay testimony from the defendant's wife regarding the defendant's alcohol use and his actions on the day of the shooting, which tended to corroborate the testimony of Dr. Zoot. "[A] reviewing court must undertake a commonsense analysis of all the evidence in context when reviewing a claim under the first prong of the plain error doctrine." *People v. Belknap*, 2014 IL 117094, ¶ 50. This case was not just a credibility contest, and considering all of the evidence of the defendant's sanity, and the testimony regarding the defendant's drinking habits, we find that the evidence was not closely balanced. Since the evidence on that issue was not closely balanced, the State's reference to the jail psychiatrist's diagnosis was not plain error.

¶ 21    In the alternative, the defendant argues that his trial counsel was ineffective for failing to object to the admission of the nontestifying psychiatrist's opinion. We review claims of ineffective assistance of counsel under the standards set forth in *Strickland v. Washington*: a defendant must show his counsel's representation fell below an objective standard of reasonableness and that the performance prejudiced the defense of the case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Since we have concluded that the references to the jail psychiatrist's diagnosis were properly offered to show the facts and conclusions underlying the experts' opinions, the single reference by the State to the fact that the defendant was diagnosed with nothing at the jail was not sufficient to establish prejudice under *Strickland*. See *People v. Albanese*, 104 Ill. 2d 504, 525 (1984) (to show prejudice, the defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different).

¶ 22    The defendant argues that the trial court erred in not admonishing the jury regarding the principle that the defendant's decision not to testify could not be held against him. A review of the record indicates that the trial court failed to ask potential jurors whether they understood and accepted the fourth principle of Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), that the defendant's failure to testify cannot be held against him. The defendant argues that this error is reversible under the plain error doctrine because the evidence was closely balanced. The State acknowledges the error, but argues that it was not reversible error because the evidence was not closely balanced. As we have already found that the evidence was not closely balanced, we find that the trial court's failure to ask the jurors whether they understood and accepted the fourth Rule 431(b) principle was not reversible error.

¶ 23    The defendant argues, and the State concedes, since we are upholding the attempted first degree murder conviction, the aggravated battery with a firearm and aggravated battery of a

child convictions should be vacated under one-act, one-crime principles. See *People v. Sullivan*, 2014 IL App (3d) 120312, ¶ 57 (convictions for less serious offenses must be vacated because multiple convictions are improper if they are based on the same physical act).

¶ 24                                    CONCLUSION

¶ 25        The attempted first degree murder conviction is affirmed, and the convictions for aggravated battery with a firearm and aggravated battery of a child are vacated.

¶ 26        Affirmed in part and vacated in part.