2018 IL App (2d) 160541
Nos. 2-16-0541, 2-16-0544, 2-16-0545 cons.
Opinion filed October 16, 2018

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) ) | Nos. 15-DT-1534 15-TR-62094 15-TR-62098 |
| PRINCE D. MONTGOMERY, | ) ) ) | Honorable Helen S. Rozenberg, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SPENCE delivered the judgment of the court, with opinion.
Justices Jorgensen and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Prince D. Montgomery, appeals his conviction of driving under the influence (DUI) (625 ILCS 5/11-501(a)(2) (West 2014)). He contends that the circuit court of Lake County erred when it declined to instruct the jury that it could infer that the contents of a missing video recording were detrimental to the State. He also contends that the trial court plainly erred under Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) because (1) the court failed to ask one of the jurors whether he understood and accepted the principle that defendant was not required to produce any evidence on his own behalf and (2) the evidence was closely balanced. We affirm.

¶ 2                                     I. BACKGROUND

¶ 3      In July 2015, defendant was cited for DUI involving alcohol, DUI involving drugs, and various traffic offenses. Only the DUI charge involving alcohol is at issue on appeal. Before trial, the State was ordered to provide defendant with a squad-car video of the traffic stop. It failed to do so, and defendant moved to bar evidence of the events captured by the video, as a sanction. The trial court denied the motion. The record does not contain a transcript of the hearing on the motion. However, in a motion to reconsider, defendant stated that the parties stipulated that Deputy Jason Plichta would testify that he recorded the stop, the video was never uploaded to the system where videos were stored, he could not explain why it was not uploaded, and he was unsure if the recording was still " 'in the [c]loud.' "

¶ 4      Defendant later moved *in limine* for the following nonpattern jury instruction: "If you find that the State has allowed to be destroyed or lost any evidence whose content or quality are in issue, you may infer that the true fact is against the State's interest." The State objected. The State told the court that during the stop Plichta had no information that the video equipment was malfunctioning, but, when he checked the system where the videos were stored, he noticed that it was not there, so no video was ever uploaded. The court sought to clarify by asking, "It was not sent to the [c]loud and unretrieved? It was actually not sent anywhere?" The State responded that, because of a malfunction in the computer, the video was not sent to the cloud. The State further said that Plichta was not sure what the error was. The court expressed concern over whether the video actually existed, and it continued the matter briefly for the attorneys to talk to Plichta. Plichta told them that he believed that the video entered the cloud, because he saw space for video on his computer free up after uploading, but that, since there were multiple videos, he could not say for sure whether the video from defendant's stop was uploaded. When he tried to

download the video, he was unable to find defendant's stop or any of the other stops that he had uploaded. The video either did not exist or was irretrievable. An information-technology person also could not retrieve the video. This was not the first time the problem had happened to Plichta. The court then stated that there was nothing to indicate that the video ever existed and was destroyed. Defense counsel replied that Plichta said that the system was recording when the stop was done, so a recording existed at one point. Ultimately, after further argument from counsel, the court denied the motion, noting that nothing showed that the State intentionally destroyed evidence. It further rejected an argument that the State did not use sufficient efforts to retrieve the video, noting that a bare allegation of such was insufficient and that there had been four months for the defense to request further investigation. The court also rejected an argument that there was a pattern of the State losing such evidence.

¶ 5    During jury *voir dire*, the trial court did not ask one of the jurors whether he understood and accepted the principle that defendant was not required to produce any evidence on his own behalf. There was no objection.

¶ 6    At trial, Plichta testified that, on July 20, 2015, at around 11 p.m., he saw defendant make a wide right turn and cross over the centerline multiple times. Plichta's radar showed that defendant was driving 59 miles per hour in a 45-mile-per-hour zone. Plichta pulled over defendant. His squad car had an audiovisual system that automatically turned on at that time.

¶ 7    Plichta was on the passenger side of the vehicle when he spoke to defendant, observing that there was also a person in the passenger seat. Defendant gave Plichta his driver's license but could not locate his insurance card. Plichta observed that defendant's movements were slow and lethargic. Plichta also smelled alcohol coming from the vehicle, and the odor got stronger when

defendant spoke. Defendant's eyes were bloodshot and glassy. Plichta ran defendant's plates and found that his license was expired.

¶ 8    Plichta went to the driver's side of the vehicle and saw defendant shove something under the rear seat and cover it with the floor mat. Plichta asked defendant to step out of the vehicle and asked him what he was hiding. Defendant said that it was alcohol, and Plichta's partner retrieved an empty bottle of hard lemonade.

¶ 9    Plichta asked defendant to perform several field sobriety tests. On the horizontal gaze nystagmus test, Plichta saw a lack of smooth pursuit in defendant's eyes. He also noted constricted pupils and asked defendant if he took any medication. Defendant said that he took an opiate pain medication, which Plichta noted could constrict the pupils. Plichta saw two out of six signs of impairment, which were not enough alone to show impairment.

¶ 10    Plichta next had defendant perform the walk-and-turn test, which requires only two signs to show impairment. Plichta observed six out of eight signs of impairment. For example, defendant stepped out of position during the instructions, raised his hands more than six inches away from his body while walking, took the wrong number of steps, and stopped walking because he forgot the instructions.

¶ 11    During the one-leg-stand test, defendant swayed and hopped to maintain his balance. Plichta observed two out of four signs of impairment, which were sufficient to show impairment. Plichta also had defendant perform a nonstandardized balance test and defendant was unable to follow the instructions. Plichta opined that defendant was under the influence of alcohol and narcotics.

¶ 12    During cross-examination, Plichta acknowledged that, other than crossing the centerline, defendant did not drive erratically. He also acknowledged that there were many possible reasons

for red, glassy eyes, such as fatigue, allergies, or exposure to smoke, and that he did not know if any of those affected defendant. Plichta agreed that lethargy could be caused by fatigue, stress, or other factors and that he did not know if defendant suffered from those issues. He also agreed that he could not tell how much a person had drunk based on the odor of alcohol alone and did not know who drank the bottle of hard lemonade that defendant concealed. Defendant was polite during the stop.

¶ 13   Defendant presented no evidence, and his motion for a directed verdict was denied. During closing, the defense was allowed to briefly argue over objection that the State had failed to present the video of the stop. The defense focused its argument on the lack of various signs of impairment and Plichta's failure to explore all other possibilities to explain defendant's performance on the tests.

¶ 14   The jury found defendant guilty of the DUI charge involving alcohol and two of the traffic offenses but acquitted him of the DUI charge involving drugs. Defendant's motion for a new trial was denied, and he was sentenced to five days in jail and 12 months' probation. He appeals.

¶ 15                                    II. ANALYSIS

¶ 16   Defendant first contends that the trial court abused its discretion when it refused his requested nonpattern instruction that the jury could infer that the contents of the missing video were against the State's interest.

¶ 17   "Whenever applicable, an Illinois Pattern Jury Instruction (IPI) should be used whenever it accurately states the law." *People v. Danielly*, 274 Ill. App. 3d 358, 367 (1995). "A non-IPI instruction should be used only if the pattern instructions for criminal cases do not contain an accurate instruction and if the tendered non-IPI instruction is simple, brief, impartial, and free

from argument." *Id.* "The decision of whether to give a non-IPI instruction is within the sound discretion of the trial court." *Id.* "The court abuses its discretion in refusing to give an instruction when the jury is not instructed on a defense theory of the case which is supported by the evidence." *Id.* at 367-68.

¶ 18     Defendant's argument that his requested instruction was required is based on a discussion of a similar instruction in *Arizona v. Youngblood*, 488 U.S. 51 (1988), and *Danielly*, 274 Ill. App. 3d at 368.  In *Youngblood*, police officers failed to refrigerate clothing of a rape victim, later resulting in the inability to perform serological tests.  The Court held that the failure to preserve the evidence was not a denial of due process, absent a showing of bad faith on the part of the police.  *Youngblood*, 488 U.S. at 58.  The Court mentioned that the trial court instructed the jury that, if it found that the State had lost or destroyed evidence whose content or quality was at issue, the jurors could infer that the true fact was against the State's interest.  *Id.* at 54.  However, in its analysis, the Court did not rely on the instruction.  In his concurrence, Justice Stevens noted that, because the instruction was given, the uncertainty as to what the evidence might have proved was an advantage to the defendant and made it unlikely that the defendant was prejudiced by the failure to preserve the evidence.  *Id.* at 59-60 (Stevens, J., concurring).  Neither the majority nor the concurrence suggested that such an instruction was required anytime that the police lost evidence.

¶ 19     In *Danielly*, the First District suggested that the instruction is mandatory.  There, the defendant was charged with aggravated criminal sexual assault in connection with an incident at the defendant's home.  The victim fled the defendant's home, leaving behind her clothes, underwear, shoes, and purse.  *Danielly*, 274 Ill. App. 3d at 360.  At the victim's request, the police returned the items to her.  She testified at trial that the underwear was torn and that she

threw it in the trash. *Id.* at 361. The defendant claimed that the sexual encounter was consensual and that the victim's underwear was not torn. *Id.* at 362-63. The jury found the defendant guilty and, on appeal, he argued that the return of the victim's underwear deprived him of due process under *Youngblood*. *Id.* at 360, 362-63. He asserted that the underwear would have been physical evidence contradicting the victim's claim that it had been torn and supporting his claim that the sex was consensual. *Id.* at 363. The appellate court rejected this argument, but reversed on other grounds. *Id.* at 364, 366. The court then addressed whether the jury should have been instructed that it could infer that the missing evidence was against the State's interest, because the issue was likely to recur on remand. *Id.* at 367. In doing so, the court noted that the instruction discussed in *Youngblood* would be appropriate and held that the defendant would be entitled to such an instruction on remand if he requested it. *Id.* at 368.

¶ 20    While *Danielly* would appear to require the instruction, nothing in *Youngblood* indicated that such an instruction was required or that a court would automatically abuse its discretion by declining to give the instruction. See *Youngblood*, 488 U.S. at 54; see also *State v. Watley*, 788 P.2d 375, 378-79 (N.M. Ct. App. 1989) (trial court not required to give *Youngblood* instruction and absence of instruction did not render the defendant's trial unfair). Further, the circumstances justifying such an instruction in *Danielly* are not present here. In *Danielly*, there were circumstances to justify an adverse inference, other than the fact that the State allowed the evidence to be lost. The victim testified that the underwear was torn, which was relevant to prove that the sex was not consensual. Indeed, the State argued at trial that the torn underwear was evidence of the defendant's guilt. *Danielly*, 274 Ill. App. 3d at 363-64. Meanwhile, the defendant testified that it was not torn. See *id.* at 362-63.

¶ 21    Here, unlike in *Danielly*, and contrary to the portion of the requested instruction concerning "evidence whose content or quality are in issue," defendant never suggested that the missing video would have shown something different from the circumstances Plichta described in his testimony.  Defendant's theory of the case was not that Plichta misstated the observable facts.  Instead, it was that those facts were insufficient to support a conclusion that defendant was impaired.  Thus, given that there was nothing to suggest that the video would have shown anything contrary to Plichta's testimony, the requested instruction was not in accordance with a defense theory of the case that was supported by the evidence.  Accordingly, the court did not abuse its discretion in declining to give it.

¶ 22    Defendant next contends that the trial court failed to comply with Rule 431(b), because the court did not ask one of the jurors whether he understood and accepted the principle that defendant was not required to produce any evidence on his own behalf.  Defendant concedes that he forfeited the issue by failing to raise it in the trial court, but he argues that it is plain error requiring reversal because the evidence was closely balanced.

¶ 23    To preserve a claim for review, a defendant must both object at trial and include the alleged error in a written posttrial motion.  *People v. Enoch*, 122 Ill. 2d 176, 186 (1988).  The plain-error doctrine allows a reviewing court to consider unpreserved error where either (1) a clear or obvious error occurs and the evidence is so closely balanced that such error threatens to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and is so serious that it affects the fairness of the defendant's trial and challenges the integrity of the judicial process, regardless of the closeness of the evidence.  *People v. Walker*, 232 Ill. 2d 113, 124 (2009).  In both instances, the burden of persuasion remains on the defendant.  *People v. Herron*, 215 Ill. 2d 167, 187 (2005) (citing *People v. Hopp*,

209 Ill. 2d 1, 12 (2004)).  The first step in conducting a plain-error review is to determine whether an error occurred at all.  *Walker*, 232 Ill. 2d at 124.

¶ 24     Rule 431(b) contains the four commonly known "*Zehr* principles."  See *People v. Zehr*, 103 Ill. 2d 472, 477 (1984).  It provides:

> "(b) The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects."  Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 25     The court's method of inquiry shall provide each prospective juror an opportunity to respond to specific questions concerning the principles set out in the rule.  *Id.*  The trial court must ensure that each prospective juror both understands and accepts each of the four principles. *People v. Belknap*, 2014 IL 117094, ¶¶ 44-46; *People v. Wilmington*, 2013 IL 112938, ¶ 32; *People v. Thompson*, 238 Ill. 2d 598, 607 (2010).  The questions may be asked of the prospective jurors individually or as a group, but in either event Rule 431(b) contemplates " 'a specific question and response process.' "  *Wilmington*, 2013 IL 112938, ¶ 32 (quoting *Thompson*, 238 Ill. 2d at 607).

¶ 26     Here, the court failed to ask one of the jurors whether he understood and accepted the principle that defendant was not required to produce any evidence on his own behalf.  The State

concedes that this violated Rule 431(b), and we agree. The question, then, is whether it was plain error.

¶ 27    "A Rule 431(b) violation is not cognizable under the second prong of the plain-error doctrine absent evidence that the violation produced a biased jury." *People   v. Daniel*, 2018 IL App (2d) 160018, ¶ 26 (citing *People v. Sebby*, 2017 IL 119445, ¶ 52). Defendant does not contend that the error produced a biased jury and argues only that the evidence was closely balanced, under the first prong of the doctrine.

¶ 28    "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Sebby*, 2017 IL 119445, ¶ 53. "That standard seems quite simple, but the opposite is true. A reviewing court's inquiry involves an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Id.*

¶ 29    In *Sebby*, the defendant was charged with felony resisting a peace officer (720 ILCS 5/31-1(a-7) (West 2010)). *Sebby*, 2017 IL 119445, ¶ 1. That charge required the State to prove in part that the defendant knowingly resisted a peace officer and that his resistance was the proximate cause of an injury to that officer. 720 ILCS 5/31-1(a-7) (West 2010). On the resistance element, the three responding officers testified that the defendant resisted. *Sebby*, 2017 IL 119445, ¶¶ 55-56. Three other witnesses, including the defendant, testified that the defendant did not resist and was instead being yanked around by the officers. *Id.* ¶¶ 57-58.

¶ 30    The *Sebby* court concluded that the evidence was closely balanced. *Id.* ¶ 61. The court observed that the State's witnesses provided accounts that were consistent with each other, as did the defendant's witnesses. *Id.* Neither party's version of the events was fanciful. *Id.* The court

rejected the State's argument that the testimony of the defendant's witnesses was less plausible because those witnesses were relatives or friends of the defendant and might be biased. *Id.* ¶ 62. The court also noted that neither party's version of the events was corroborated by extrinsic evidence. *Id.* The court found that, as in *People v. Naylor*, 229 Ill. 2d 584 (2008), the outcome of the trial depended on a " 'contest of credibility' " between the officers and the defendant. *Sebby*, 2017 IL 119445, ¶ 63 (quoting *Naylor*, 229 Ill. 2d at 606-07). The court explained that, because the outcome depended on a choice between two versions that were both credible, the evidence was closely balanced. *Id.* (citing *Naylor*, 229 Ill. 2d at 608). Recently, in *Daniel*, 2018 IL App (2d) 160018, ¶ 31, we applied *Sebby* and found the evidence to be closely balanced when witnesses for the State and witnesses for the defense gave plausible opposing versions of the events, neither of which was corroborated by extrinsic evidence.

¶ 31    However, courts have found no "credibility contest" when one party's version of the events was either unrefuted, implausible, or corroborated by other evidence. See, *e.g.*, *People v. Effinger*, 2016 IL App (3d) 140203, ¶¶ 12, 26 (circumstantial evidence supported victim's version of the events and defense presented no evidence); *People v. Tademy*, 2015 IL App (3d) 120741, ¶¶ 19-20 (no "credibility contest" between experts where lay testimony corroborated one expert's testimony); *People v. Lopez*, 2012 IL App (1st) 101395, ¶¶ 88-90 (evidence not closely balanced where circumstantial evidence supported State's witnesses' testimony while defendant's entire version of events "strained credulity"); *People v. Anderson*, 407 Ill. App. 3d 662, 672 (2011) (evidence not closely balanced where defendant's version of events was implausible).

¶ 32    Here, the evidence was not closely balanced. Unlike in cases such as *Sebby*, where the outcome of the trial depended on a contest of credibility, there was no such contest in this case.

Through Plichta's testimony, the State presented ample evidence to support the conclusion that defendant was impaired. That evidence was unrefuted. No evidence was presented to challenge Plichta's honesty or to support defendant's speculation that defendant might have shown signs of impairment for reasons other than intoxication. Defendant points to weaknesses in the State's case, such as the lack of some signs of impairment, but the evidence need not be perfect to avoid application of the plain-error doctrine. Instead, we apply a commonsense approach based on the context of the case. Given that the State's evidence was strong and unrefuted, we cannot say that the evidence as a whole was closely balanced.

¶ 33                                III. CONCLUSION

¶ 34     The trial court did not abuse its discretion when it declined to instruct the jury that it could infer that the contents of the missing video recording were detrimental to the State. The trial court also did not plainly err when it failed to ask one of the jurors whether he understood and accepted the principle that defendant was not required to produce any evidence on his own behalf. Accordingly, the judgment of the circuit court of Lake County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 35     Affirmed.