2022 IL App (1st) 201133-U

No. 1-20-1133

Order filed July 27, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 13391 |
| | ) | |
| NATHAN LYMON, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court.
Justices Ellis and Burke concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's failure to fully comply with Supreme Court Rule 431(b) was not reversible under the plain error doctrine as the evidence was not closely balanced.

¶ 2   Following a jury trial, defendant Nathan Lymon was found guilty of one count of delivery of a controlled substance and was sentenced to nine years' imprisonment. On appeal, defendant argues the trial court failed to comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012)

during *voir dire*, which constituted plain error because the evidence was closely balanced. We affirm.

¶ 3    Defendant was charged by indictment with one count of delivery of a controlled substance, namely, between 1 and 15 grams of heroin (720 ILCS 570/401(c)(1) (West 2016)), for an incident on May 23, 2017.

¶ 4    During *voir dire*, the trial court admonished the venire that a defendant is presumed innocent, must be found guilty beyond a reasonable doubt, and is not required to offer evidence on his own behalf, and further, the choice not to testify cannot be held against the defendant. After explaining the first, second, and fourth principles, the court asked whether "everybody understands" and "will follow the law" and requested that jurors who did not understand or would not follow the law raise their hands. However, after explaining the third principle, the court only asked, "Does everybody understand that? If not, raise your hand. No hands are up."

¶ 5    Eleven jurors were chosen from this venire. The final juror, who was chosen from a separate venire, agreed that she "underst[ood]" and "would follow the law" regarding all four principles.

¶ 6    At trial, Chicago police officer Terrence Looney testified that on May 23, 2017, he organized an undercover operation to purchase narcotics without immediately arresting the seller. Looney had worked in the narcotics division for over 20 years and had participated in over 200 undercover operations.

¶ 7    That same day, Looney called defendant and agreed to purchase 16 bags of heroin from him for $120 in a currency exchange parking lot on Chicago Avenue and Cicero Avenue. Looney

arrived in an unmarked vehicle at 1:38 p.m. Officer Darius Reed was already present in a separate unmarked vehicle, where he maintained surveillance on Looney and filmed the transaction.

¶ 8 Defendant, whom Looney identified in court, arrived in a silver Chevrolet HHR. He parked and then entered the front passenger seat of Looney's vehicle. Looney recognized defendant from a previous encounter on May 10, 2017. Looney gave defendant prerecorded 1505 funds, and defendant retrieved from his pants a plastic bag with bundles of smaller bags of suspect heroin. Defendant handed Looney a small bag containing multiple smaller bags and "encouraged" him to count them to make sure there were 16 as they had discussed (R 340). After defendant exited the vehicle, Looney radioed his team and related the transaction. Looney went to the police station, where he placed the suspect narcotics in a heat-sealed bag that was assigned inventory number 13922430 and submitted for forensic testing.

¶ 9 Looney identified People's Exhibit Nos. 3-9 as photos of defendant at the time of the transaction. The exhibits, which are included in the record on appeal, depict an individual whom Looney identified as defendant exiting a silver SUV, entering and exiting Looney's vehicle, and returning to the silver SUV. People's Exhibit No. 9 is a photo of the silver SUV's rear license plate with the number AK90300. Looney also identified People's Exhibit No. 10 as the inventoried bag of suspect narcotics he sent for testing, with his signature on the upper left-hand corner indicating that he created the bag and sealed it.

¶ 10 On cross-examination, Looney confirmed that these events occurred more than 2½ years before trial. While working undercover, Looney used slang, dressed casually, and had grown his beard to convince people he used drugs. Looney personally called defendant and arranged the operation. Looney's undercover vehicle was not furnished with surveillance equipment. Looney

believed surveillance officers followed defendant after the transaction, but no arrest occurred, and the 1505 funds were not recovered. Looney was not present when defendant was arrested approximately six months before trial.

¶ 11   Reed testified that he was one of five surveillance officers working with Looney on May 23, 2017. At approximately 1:30 p.m., Reed parked his unmarked vehicle in the currency exchange lot and sat in the driver's seat with a video camera. Reed observed Looney enter and park. Defendant, whom Reed identified in court, then arrived in a silver Chevrolet HHR SUV, which he parked near Reed. Defendant entered Looney's vehicle on the front passenger side before exiting and driving away.

¶ 12   The State placed Reed's video into evidence and then published it to the jury, which is included in the record on appeal. The video depicts Looney's unmarked vehicle with dark tinted windows parked opposite and to the right of Reed's vehicle. An individual, whom Reed testified in court was defendant, exits the driver's seat of a silver Chevrolet SUV and enters the front passenger side of the unmarked vehicle. Approximately two minutes later, defendant exits the unmarked vehicle and returns to the silver Chevrolet. The camera briefly points towards the floor as defendant approaches the Chevrolet but returns to the window as defendant drives away. The camera zooms onto the license plate, which reads AK90300.

¶ 13   According to Reed, officers use the phrase "99 S Confidential" in place of names and addresses in order to protect the integrity of long-term investigations. On People's Exhibit No. 12, a photo of the parking lot on Chicago and Cicero, Reed identified where Looney, defendant, and his own vehicle were situated during the transaction.

¶ 14    On cross-examination, Reed confirmed that he did not draft any reports in the case and relied on his memory for his testimony. He had participated in "[h]undreds" of undercover investigations in various roles. Reed confirmed that he could not observe inside Looney's vehicle during the incident.

¶ 15    Laneen Blount, a forensic scientist for the Illinois State Police Crime Lab, testified that on June 21, 2017, she received People's Exhibit No. 10, an evidence bag. She identified her initials on the bag indicating when she handled the evidence and markings which indicated the nature of its contents. When she received the bag, it was sealed and held 16 other bags containing powder. Blount opened 12 of those bags, weighed and tested their contents, and determined they were positive for 3.224 grams of heroin.

¶ 16    On cross-examination, Blount confirmed a Chicago Police Department inventory sheet that was affixed to the bag when she received it read, "99 S Confidential." Defendant's name did not appear on the bag or inventory sheet, although evidence usually had a name attached to it.

¶ 17    Jennifer Smith testified that she shared three children with defendant. In March 2017, she purchased a gray Chevrolet HHR sports utility vehicle. She identified People's Exhibit Nos. 1-2 as a photo of a vehicle resembling hers and title paperwork for her vehicle, respectively. She agreed that the license plate listed on the paperwork was AK90300, and that this was the plate on her vehicle. Smith then testified that she did not "agree" that People's Exhibit No. 2 was the "paper" she signed for the vehicle, and that the signature on the papers did not "look like [her] signature." On cross-examination, Smith testified that she had known defendant since she was around 14 years old and that they had previously lived together.

¶ 18    During closing arguments, defense counsel posited that Looney's testimony was questionable as no phone records corroborated that he called defendant, there was no recording from inside the unmarked vehicle, other officers did not stop defendant to check his identification after the transaction or recover the 1505 funds, and no name was "attached" to the drugs that Blount tested. Counsel called Looney "a professional liar" and an "actor" whose job is to convince others that he uses drugs.

¶ 19    During deliberations, the jury sent a note to the court requesting to review the transcripts of Looney's and Reed's testimony. The court provided copies of the transcripts to the jury.

¶ 20    The jury found defendant guilty of one count of delivery of a controlled substance. The court denied defendant's amended motion for new trial and, following a sentencing hearing, imposed nine years' imprisonment. The court denied defendant's motion to reconsider sentence.

¶ 21    On appeal, defendant argues the trial court erred during *voir dire* when it failed to ask potential jurors whether they accepted that defendant did not have to present evidence on his own behalf. Defendant acknowledges that he did not object to the error at trial or in a posttrial motion, but requests plain error review and argues the evidence was closely balanced. The State concedes that the court erred but disagrees that the evidence was closely balanced.

¶ 22    If a defendant fails to object to an error at trial and raise the error in a posttrial motion, he forfeits the issue on appeal. *People v. Belknap*, 2014 IL 117094, ¶ 47. However, forfeited errors may be reviewable under the plain error doctrine when (1) the evidence was closely balanced such that "the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the error was "so serious that it affected the fairness of the trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence."

*Belknap*, 2014 IL 117094, ¶ 48. A defendant raising an unpreserved Rule 431(b) claim must establish first-prong plain error. *People v. Rodriguez*, 2022 IL App (1st) 200315, ¶ 134. The first step of plain error review is to determine whether clear error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). Where there is clear error, this court must then determine whether it rises to the level of plain error. *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 46.

¶ 23    Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) codifies the supreme court's decision in *People v. Zehr*, 103 Ill. 2d 472 (1984), regarding admonishments to a venire during *voir dire*. According to the rule:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects.
>
> The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R 413(b) (eff. July 1, 2012).

¶ 24     "Our review of alleged violations of Rule 431(b) is *de novo*." *Rodriguez*, 2022 IL App (1st) 200315, ¶ 134. "A *de novo* review entails performing the same analysis a trial court would perform." *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 25    In the present case, during *voir dire*, the trial court addressed the venire, explaining the first, second, and fourth principles and then asking, "Does everybody understand that? If not, raise your hand *** If you will not follow the law, raise your hand." After explaining the third principle, the court only asked: "Does everybody understand that? If not, raise your hand." The court failed to ask whether the potential jurors would follow this principle.  This is clear error, as the supreme court has held that the trial court must ask jurors if they both understand and accept each of the Rule 431(b) principles. *Sebby*, 2017 IL 119445, ¶ 49.

¶ 26    "The only question in a first prong case, once clear error has been established, is whether the evidence is closely balanced." *Sebby*, 2017 IL 119445, ¶ 69. To determine whether evidence is closely balanced, this court must make a "commonsense assessment" of all the evidence within the context of the case. *Sebby*, 2017 IL 119445, ¶ 53 (citing *Belknap*, 2014 IL 117094, ¶¶ 52-53). This requires examining the evidence of the elements of the charges as well as "any evidence regarding the witnesses' credibility." *Sebby*, 2017 IL 119445, ¶53. Evidence is closely balanced where both parties have presented credible witnesses or where the credible testimony of a witness is countered by evidence which casts doubt on his or her testimony. *Jackson*, 2019 IL App (1st) 161745, ¶ 48. "No 'credibility contest' exists when one party's version of events is unrefuted, implausible, or corroborated by other evidence." *Jackson*, 2019 IL App (1st) 161745, ¶ 48 (citing *People v. Montgomery*, 2018 IL App (2d) 160541, ¶ 31). Evidence is not closely balanced simply because the trier of fact must evaluate the credibility of witnesses even where there is no opposing evidence or testimony. *Jackson*, 2019 IL App (1st) 161745, ¶ 48.

¶ 27    Here, a commonsense assessment shows that the evidence was not closely balanced. Both Looney and Reed testified to a clear and unrefuted timeline of events which is corroborated by the physical evidence of the narcotics and video evidence.

¶ 28    Looney testified that he arranged to meet defendant in a parking lot on Chicago and Cicero. Reed's footage shows an individual whom Reed and Looney identified in court as defendant arriving in a vehicle which belonged to the mother of defendant's children and entering and exiting Looney's vehicle. After Looney acquired the narcotics from defendant, Looney returned to the police station and inventoried them. Looney and Blount identified their markings on the inventory bag and the dates they handled the evidence. Blount tested the content of 12 of the 16 bags and found they were positive for 3.224 grams of heroin. No evidence undermined the State's evidence, rendered it implausible, or introduced a different explanation of events.

¶ 29    Nevertheless, defendant argues that evidence of his identity as the offender was closely balanced because Looney's testimony that he met defendant on May 10, 2017, was uncorroborated, officers did not stop defendant to check his identification after the transaction, no recordings were made inside Looney's vehicle, and no phone records of Looney's call with defendant were introduced. This lack of evidence, according to defendant, undermines whether Looney actually acquired the narcotics from defendant as he testified. Defendant further argues that the anonymous label of "99 S Confidential" on the evidence bag renders the evidence closely balanced because there is no way to identify the source of the evidence.

¶ 30    Defendant does not cite any evidence from trial which is closely balanced by other evidence, but rather, argues that deficiencies exist in the evidence that was presented. Evidence is closely balanced where both parties have presented credible witnesses or where the credible testimony of a witness is countered by evidence which casts doubt on his or her testimony. *Jackson*, 2019 IL App (1st) 161745, ¶ 48. Here, though counsel argued that Looney was a "professional liar," there was no evidence to indicate that any of the police testimony was not credible. Further,

while defendant notes the jury requested to review the transcripts of the officers' testimony, evidence is not closely balanced merely because it must be scrutinized closely by the trier of fact. *Jackson*, 2019 IL App (1st) 161745, ¶ 48. The evidence here was not closely balanced, and therefore the trial court's error in delivering the Rule 431(b) admonishments does not merit reversal.

¶ 31     For the foregoing reasons we affirm the judgment of the trial court.

¶ 32     Affirmed.