2020 IL App (1st) 170595-U

No. 1-17-0595

Order filed March 31, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 9556 |
| | ) | |
| D'ARD JUNIOUS, | ) | Honorable |
| | ) | Vincent Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for armed habitual criminal affirmed over his claim that his right to a fair trial was violated by the trial court's failure to comply with Illinois Supreme Court Rule 431(b) and in the court's description of the concept of reasonable doubt.

¶ 2    Following a jury trial, defendant D'ard Junious was found guilty of armed habitual

criminal and sentenced to 7½ years in prison.[1] On appeal, defendant contends that the trial court erred when it improperly attempted to define reasonable doubt while questioning the jury and failed to comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). We affirm.

¶ 3 Defendant was charged with one count of armed habitual criminal, four counts of unlawful use or possession of a weapon by a felon, and four counts of aggravated unlawful use of a weapon following his June 6, 2016 arrest. The State proceeded solely on the charge of armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2016)).

¶ 4 During jury selection the trial court explained to the potential jurors that defendant is presumed innocent throughout the trial unless the jury is convinced from the evidence that defendant is guilty. The court further stated that the State had the burden to prove defendant's guilt beyond a reasonable doubt, and that defendant was not required to prove his innocence or present evidence on his own behalf. The court then explained that it would discuss "some basic principles of law that apply to all criminal cases," but that the jury would receive "final and complete instructions" in both verbal and written form after hearing all the evidence and arguments of the attorneys. The court then stated:

"First off, anybody placed on trial in a criminal case is presumed to be innocent of the charge against him. Basically, what does that mean? If you were selected as a jury, and I sent you back to the jury room and told you, I want a verdict, and you haven't heard any evidence, the only verdict which you could come back with is not guilty, because there's no evidence against [defendant], and he is presumed to be innocent.

---

[1] The record reveals that defendant's given name is also spelled Dard and his family name is also spelled Juniuos.

Does anybody have any problems understanding the constitutional principle that anybody placed on trial in a criminal case is presumed to be innocent of the charge against him? Please raise your hand."

¶ 5 The court noted that no hands were raised. The court then asked if anyone had "any qualms or problems" applying that principle and observed that no one responded. The court stated:

"The next constitutional principle I want to talk to you about is the burden of proof. Some of you may have sat on civil jurors [*sic*]. There, the burden of proof is preponderance of the evidence, and if you look at a scale, all you have to do is tilt it, and the definition there, it's more likely than not that the event occurred.

But in a criminal case, the burden of proof is proof beyond a reasonable doubt, and this burden is the highest burden of proof at law.

Does anybody have any problems understanding that in a criminal case the burden of proof is proof beyond a reasonable doubt? Please raise your hand."

¶ 6 The court noted that no one raised a hand. The court asked whether anyone had "problems or qualms about applying that constitutional principle that proof in a criminal case is proof beyond a reasonable doubt," and noted that no one responded.

¶ 7 Next, the court explained that the State had the burden of proof throughout the trial and that "the burden of proof is proof beyond a reasonable doubt." The court then asked whether anyone had "difficulty" understanding that the State had the burden of proof, that this burden stayed with the State throughout trial, and that the relevant burden was that of proof beyond a

reasonable doubt. No hands were raised. The court asked whether anyone had any problems or qualms about applying this principle and noted that no one responded.

¶ 8    The trial court next stated that defendant had the right to testify on his own behalf, and that his testimony should be judged like that of any other witness. The court asked if anyone had "any problems understanding that constitutional principle" or "any problems or qualms about applying that constitutional principle," and noted that no hands were raised in response to either question. The court explained that defendant also had the right not to testify and that "no inference whatsoever can be drawn from his silence." The court asked if anyone had "any problems understanding that constitutional principle" or any problems applying that constitutional principle and noted that no one responded to either question. The jury was then selected, and the matter proceeded to trial.

¶ 9    Chicago police officer Michael Power testified that around 5 p.m. on June 6, 2016, he and his partner arrived at a gas station and observed defendant "hanging on top of the gas pumps." Defendant was "off the ground." As Power drove toward defendant, he dismounted and walked away. Power lowered the window and yelled at defendant to come and talk to him. Defendant did not. As Power exited the vehicle, defendant ran. Power chased defendant on foot. During the chase, Power observed defendant reach into his waistband, remove a black and silver firearm, and throw the firearm onto a garage roof. Power eventually caught and arrested defendant. Power relocated to the garage where he climbed onto his vehicle and retrieved the firearm.

¶ 10    Testimony from an evidence technician and a fingerprint analysis expert established that "ridge impressions" recovered from the firearm's magazine and slide were not suitable for

comparison and identification. The State entered a stipulation that defendant "has been convicted of two prior qualifying felonies for purposes of the armed habitual criminal statute." Defendant did not present any evidence.

¶ 11 The jury found defendant guilty of armed habitual criminal. Following a sentencing hearing, the court sentenced defendant to 7½ years in prison.

¶ 12 On appeal, defendant contends that he was deprived of a fair trial based upon the trial court's failure to comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). Defendant acknowledges that he failed to preserve this issue for review because he did not raise it during *voir dire* or in a posttrial motion. See, *e.g.*, *People v. Enoch*, 122 Ill. 2d 176, 186 (1998). However, he asks this court to review his claims pursuant to the plain-error doctrine.

¶ 13 The plain-error doctrine permits this court to consider an unpreserved error when either (1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatens to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear and obvious error occurs and that error is so serious that it affects the fairness of the defendant's trial and challenges the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Under both prongs of the plain-error analysis, the burden of persuasion rests with the defendant. *Id*. We first determine whether an error occurred because absent error, there can be no plain error. *People v. Wilson*, 404 Ill. App. 3d 244, 247 (2010).

¶ 14 Defendant first contends that the trial court erred when it described the concept of reasonable doubt to the venire with a scale analogy and that this error deprived him of a fair trial in a closely balanced case.

¶ 15     Illinois is among the jurisdictions that do not define reasonable doubt. *People v. Downs*, 2015 IL 117934, ¶ 19. Attempts to define the term "reasonable doubt" for jurors are discouraged in Illinois. See *id*. ("This court has long and consistently held that neither the trial court nor counsel should define reasonable doubt for the jury."). This is because the term " 'reasonable doubt' is self-defining and needs no further definition." *Id*. No definition of reasonable doubt is provided in the Illinois Pattern Jury Instructions, and the Committee Note states that "[t]he Committee recommends that no instruction be given defining the term 'reasonable doubt.' " *Id.* ¶ 20 (quoting IPI Criminal 4th No. 2.05 (4th ed. 2000), Committee Note). "Generally, jury instructions are reviewed under an abuse-of-discretion standard; however, our review is *de novo* when the issue concerns whether the jury instruction correctly conveyed the applicable law." *People v. Green*, 2017 IL App (1st) 152513, ¶ 61.

¶ 16     The State asserts the trial court's comments are identical to those made in *People v. Johnson*, 2013 IL App (1st) 111317. In that case, the trial court used the scale analogy to demonstrate the higher standard of proof beyond a reasonable doubt compared to the civil standard of proof by a preponderance of the evidence. *Id.* ¶ 52. Although we did not "condone the reference and comparison to the civil standard," this court concluded that the trial court's comments did not constitute error when the trial court also told the potential jurors that reasonable doubt was the highest burden at law and that it was for the jury to decide what reasonable doubt means. *Id.* ¶ 54. In the case at bar, as in *Johnson*, the trial court did not give an exact percentage or number value when discussing reasonable doubt. In that sense, the trial court did not define reasonable doubt, but rather informed the venire that it was a higher burden than the preponderance standard. See *id*. ¶ 52.

¶ 17 Similarly, in *People v. Green*, 2017 IL App (1st) 152513, the trial court used a scale analogy to demonstrate that the civil burden of proof was different than the burden of proof in a criminal case and stated that " 'proof beyond a reasonable doubt is the highest burden of proof at law.' " *Id.* ¶¶ 10, 62. On appeal, we determined that the court's statement "clearly and accurately stated the law" when it (1) identified the applicable burden of proof as beyond a reasonable doubt, (2) distinguished the lesser standard of proof in civil cases, and (3) emphasized that reasonable doubt is the highest standard of proof at law. *Id.* ¶ 62. We therefore concluded that the trial court did not err during preliminary instructions. *Id.*

¶ 18 We decline defendant's invitation to depart from our previous decisions. As in *Johnson* and *Green*, the trial court did not err when it explained that the relevant burden of proof was that of reasonable doubt, that the standard of proof in civil cases was lesser, and that reasonable doubt was the highest standard of proof at law. Because we "cannot say that the trial court's comments created a reasonable likelihood that the jury convicted defendant on a standard of proof less than beyond a reasonable doubt" (*Green*, 2017 IL App (1st) 152513, ¶ 62), we find no error, and defendant's procedural default must be honored.

¶ 19 Defendant next contends that the trial court violated Illinois Supreme Court Rule 431(b) when it failed to admonish the jury that defendant was not required to offer evidence on his own behalf and to ensure that potential jurors understood and accepted the principles that were explained.

¶ 20 Illinois Supreme Court Rule 431(b) requires that the trial court ask each prospective juror, either individually or in a group, whether he or she "understands and accepts" four fundamental principles:

"(1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 21    Our supreme court has held that the "clear and unambiguous" language of Rule 431(b) states that the trial court " 'shall ask' " each potential juror whether he or she understands and accepts the four principles. *People v. Thompson*, 238 Ill. 2d 598, 607 (2010). Whether the trial court's admonishments complied with Rule 431(b) is a matter of law which we review *de novo*. *People v. Belknap*, 2014 IL 117094, ¶ 41.

¶ 22    Here, the record reveals that the trial court did not expressly ask the prospective jurors whether they both understood and accepted defendant's presumption of innocence, the burden of proof, that defendant was not required to present any evidence, or defendant's right not to testify. Instead, the record demonstrates that the trial court asked if anyone had any "problems" or "qualms" with three of the propositions, and did not question the potential jurors about the principle that a defendant is not required to present any evidence. Thus, the trial court erred in its questioning under Rule 431(b). See *People v. Sebby*, 2017 IL 119445, ¶ 49 (finding "clear error" where the trial court asked jurors whether they " 'had any problems with' " or " 'believed in' " the Rule 431(b) principles).

¶ 23    Having found error, we must now determine whether, as defendant asserts, the evidence at trial was closely balanced.

¶ 24    When a defendant argues first prong plain error, a court of review determines whether he has shown that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. *Id.* ¶ 51. On review, we must conduct a qualitative, commonsense evaluation of the evidence based on the totality of the circumstances in the case. *Sebby*, 2017 IL 119445, ¶ 53. The evaluation deals not with the sufficiency of close evidence, but with the closeness of sufficient evidence, and requires us to assess the evidence with respect to the elements of the offense and the witnesses' credibility. *Id.* ¶¶ 53, 60.

¶ 25    To prove defendant guilty of armed habitual criminal, the State was required to prove beyond a reasonable doubt that defendant possessed a firearm after having been twice convicted of certain qualifying felonies. See 720 ILCS 5/24-1.7(a) (West 2016).

¶ 26    In this case, the evidence was not closely balanced as to whether defendant committed the offense of armed habitual criminal. Here, the State presented significant evidence for a jury to find that defendant was a twice-convicted felon in possession of a firearm. First, the parties stipulated to defendant's prior qualifying convictions. Second, Officer Power testified that after observing defendant swinging from gas pumps, he yelled at defendant to come and speak to him, chased defendant when defendant ran, and observed defendant pull out a firearm and throw it onto a garage roof. We must undertake "a commonsense analysis of all the evidence in context" when considering an argument under the first prong of plain error (*Belknap*, 2014 IL 117094, ¶ 50), and here, Power's testimony that he observed defendant throw a firearm during the chase was straightforward and uncontested.

¶ 27    Defendant, however, argues that Power had a "dubious" reason for chasing him which called Power's "entire testimony into question." He notes that Power was the only person who

observed him with a firearm, no physical evidence tied him to the firearm, and he did not make an inculpatory statement.

¶ 28    Evidence has been found to be closely balanced when each side has presented credible witnesses or where the credible testimony of a witness is countered by evidence that casts doubt on his or her account. See *Sebby*, 2017 IL 119445, ¶¶ 61-63 (evidence is closely balanced where the outcome turns on the resolution of a " 'contest of credibility,' " both sides offer credible versions of events, and neither version is supported by corroborating evidence); *People v. Evans*, 369 Ill. App. 3d 366, 376 (2006) ("the verdict was based primarily upon a credibility determination of the competing theories testified to by the parties' respective experts"); *People v. Wilson*, 199 Ill. App. 3d 792, 795 (2011) (the victim's testimony, which was the principal evidence against the defendant, was challenged by another witness's testimony that the victim had a motive to lie). In contrast, evidence has been deemed to be not closely balanced when one witness's version of events was either implausible or corroborated by other witnesses. See, *e.g.*, *People v. Daniel*, 2018 IL App (2d) 160018, ¶ 30.

¶ 29    Applying those standards here, we do not find the evidence against defendant was closely balanced. There were no witnesses presented who casted doubt on the version of events testified to by Officer Power. The need to determine the credibility of a witness where no competing witness or other evidence was presented does not render the evidence closely balanced. *People v. Hammonds*, 409 Ill. App. 3d 838, 861-62 (2011). Although defendant contends that because Power did not observe him commit a crime, there was no reason to approach and chase him, Power testified that defendant was swinging off a gas pump. Moreover, the absence of physical evidence against a defendant does not preclude a finding that the other evidence presented was

not closely balanced. See *People v. Cosmano*, 2011 IL App (1st) 101196, ¶ 76. As such, because the evidence against defendant was not closely balanced, he cannot obtain relief under the plain-error doctrine.

¶ 30    For the forgoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 31    Affirmed.